Filed 12/13/17 (unmodified opn. attached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MALISSA JULIAN et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>GLENAIR, INC.,<br><br>    Defendant and Appellant. | B277064<br>(Los Angeles County<br>Super. Ct. No. BC597683)<br><br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>PETITION FOR REHEARING<br><br><br>[NO CHANGE IN<br>JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed herein on November 27, 2017 be modified as follows:

On page 4, line 8, after "[the Rojas action].", insert the following footnote:

> "The proposed agreement further provided that "to the extent permitted by law, for any claims for which you are seeking relief as a private attorney general on behalf of a government entity as a representative action, both you and [Glenair] agree that any such dispute shall be resolved on an individual basis only under this

Program . . . , and that such an action may not be used to resolve the claims or rights of other employees or individuals in a single proceeding . . . .""""

On page 19, lines 10 though 20, delete:

"Here, the arbitration agreement also contains a provision barring such claims, but Glenair's petition to compel did not attempt to enforce that provision. Rather, before the trial court and on appeal, Glenair has contended only that the agreement obliges respondents to submit their PAGA claim as a whole to arbitration.

In order to resolve Glenair's contention, we must examine the circumstances under which employees may agree to arbitrate PAGA claims, thereby waiving their right to assert those claims in a judicial forum."

And substitute:

"Here, the arbitration agreement also bars such claims "to the extent permitted by law," but Glenair's petition to compel requested only an order that respondents submit their claims to arbitration as required under the agreement, and a stay of court proceedings. For the reasons explained below, we conclude that to the extent the petition sought arbitration of respondents' claims, the agreement constituted an unenforceable predispute waiver of respondents' right to litigate their claims in court. In view of *Iskanian*, our conclusion necessarily implies as a corollary that the agreement also constituted an unenforceable predispute waiver of respondents' right to assert PAGA claims on behalf of other employees in any forum. (*Iskanian*, *supra*, 59 Cal.4th at pp. 382-383.) The focus of our inquiry is therefore on the predispute/postdispute boundary relating to agreements that require arbitration of PAGA claims in lieu of litigation in court.

In order to resolve that issue, we must examine the circumstances under which employees may agree to arbitrate

2

PAGA claims, thereby waiving their right to assert those claims in a judicial forum."

Glenair's petition for rehearing is denied. The modification does not change the judgment.

_____

*EPSTEIN, P. J.     WILLHITE, J.     MANELLA, J.

Filed 11/27/17 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MALISSA JULIAN et al., | B277064 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC597683) |
| v. | |
| GLENAIR, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge.  Affirmed.

Gibson, Dunn & Crutcher, Jesse A. Cripps, Sarah E. Gerdes, and Sarah Zenewicz for Defendant and Appellant.

Matern Law Group, Matthew J. Matern and Tagore Subramaniam for Plaintiffs and Respondents.

_____

Appellant Glenair, Inc., challenges the denial of its motion to compel arbitration of respondents' claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.). Glenair contends an agreement respondents executed during their employment with the company was an enforceable postdispute agreement obligating them to arbitrate the claim. We hold that an agreement to arbitrate a PAGA claim, entered into before an employee is statutorily authorized to bring such a claim on behalf of the state, is an unenforceable predispute waiver. As any agreement by respondents was entered into before they were authorized to bring a PAGA claim, the trial court properly denied the petition to compel.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A. *Events Preceding Underlying Action*

Respondents Malissa and Machele Julian began their employment with Glenair, respectively, in 2012 and 2013.[1] In April 2013, an action was commenced against Glenair (L.A. County Super. Ct. Case No. BC505602) in which Roxane Rojas was ultimately identified as the principal named plaintiff (the *Rojas* action). Rojas's first amended complaint, filed February 14, 2014, asserted putative class

---

[1] As respondents share their surname and are sisters, we refer to them by their first names.

claims based on alleged violations of the Labor Code and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), as well as a PAGA claim for civil penalties.

In July 2014, Glenair served its hourly employees with a proposed arbitration agreement entitled "Glenair Dispute Resolution Program."  The proposed agreement informed employees that if they did not "opt out," their continued employment with Glenair manifested consent to mandatory arbitration of a broad range of claims, including claims for wages or other compensation due, meal or rest periods, and "violation of applicable federal, state or local law, statute, ordinance, or regulation.  The proposed agreement further stated that it was governed by the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.), and that the parties' intent was that "the FAA shall preempt all [s]tate laws to the fullest extent permitted by law."

In bold capital letters with underlining, the proposed agreement provided:  "Your decision to participate in the [program] is completely voluntary.  You may opt[]out of the [program] within 30 calendar days of receipt.  Your decision to participate or not participate in the program will have no effect on your work with Glenair.  If you do not opt[]out . . . :

> (1) Mandatory arbitration is your . . . sole and exclusive means of resolving past, present, and future claims, controversies, and disputes between you and the company covered by this program;

3

(2) You will not be able to participate in any class or collective action covered by this program, including . . . [the *Rojas* action]; and

(3) To the extent permitted by law, you will not be able to participate in any representative action that seeks to resolve whether individuals other than you have been subject to violations of the law, including . . . [the *Rojas* action]."

The proposed agreement contained a description of the claims then asserted in the *Rojas* action, including the PAGA claim.

On July 16, 2014, Glenair distributed copies of the proposed agreement to its hourly employees by first class mail. When the copy sent to Machele was returned as undeliverable, Stephen Bruce, an attorney employed by Glenair, personally observed her supervisor give her a copy of the proposed agreement. Neither respondent took any action to opt out of the proposed agreement.

In January 2015, respondents' employment was terminated. In late 2014 or early 2015, a third amended complaint was filed in the *Rojas* action that asserted no PAGA claim. In April 2015, attorney Bruce received a copy of a proposed fourth amended complaint in the *Rojas* action, which identified respondents as additional named plaintiffs and contained a PAGA claim. Later, in May 2015, Glenair sent a demand for arbitration to respondents and their counsel, who also represented the existing named plaintiffs

4

in the *Rojas* action.  Respondents did not answer the demand for arbitration, and the proposed fourth amended complaint in the *Rojas* action was never filed.

B.  *Underlying Action*

In October 2015, respondents initiated the underlying action against Glenair.  Their complaint contains a single claim under PAGA for civil penalties "on behalf of themselves and other current and former non-exempt employees" of appellants.  The claim is predicated on alleged violations of the Labor Code and Industrial Welfare Commission Wage Order No. 1-2001 (Wage Order 1-2001).[2] The complaint asserts that respondents are "'aggrieved employees'" for purposes of a representative action under PAGA, and that they complied with the requirements for commencing a representative action under PAGA.

---

[2]     The claim seeks penalties for failure to provide meal and rest periods (Lab. Code, § 226.7; Wage Order No. 1-2001, §§ 11-12), failure to pay overtime wages (Lab. Code, §§ 510, 1194, 1198; Wage Order No. 1-2001, § 3), failure to pay minimum wages (Lab. Code, §§ 1194, 1198; Wage Order No. 1-2001, § 4 ), failure to pay timely wages (Lab. Code, § 204), failure to pay all wages due to former employees (Lab. Code, §§ 201, 202, 203), failure to maintain records (Lab. Code §§ 226, subd. (a), 1174, subd. (d); Wage Order No. 1-2001, § 7), failure to furnish itemized wage statements (Lab. Code, § 226, subd. (a); Wage Order No. 1-2001, § 7), and failure to indemnify employees for work-related expenses (Lab. Code, § 2802).

5

Glenair filed a petition for an order to compel arbitration of respondents' claim (Code Civ. Proc., § 1281.2). Relying on *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382 (*Iskanian*), Glenair maintained that respondents, in the course of their employment, signed an enforceable voluntary postdispute arbitration agreement that encompassed their claim. Glenair argued that in *Iskanian*, our Supreme Court prohibited predispute waivers of PAGA claims, but approved postdispute waivers of PAGA claims by employees aware of Labor Code violations.

Respondents opposed the petition, contending they entered into no enforceable agreement requiring arbitration of their PAGA claim. They argued that they were insufficiently aware of their right to assert a PAGA claim when they failed to opt out of the proposed agreement. Additionally, they argued that the agreement was unenforceable due to procedural and substantive unconscionability.

In support of those contentions, respondents relied on their own declarations. Malissa stated that prior to her termination, she never received the proposed arbitration agreement, and had no knowledge of the proposed agreement, the *Rojas* action, and her potential claims against Glenair. Machele stated that in July 2014, her boss handed her the proposed arbitration agreement. She tried to read it but did not understand it, and decided that she did not want to participate in the dispute resolution program. She took no further action, believing that the agreement

would bind her only if she signed it. Machele further stated that prior to her termination, she was unaware of the *Rojas* action and her potential claims against Glenair.

On April 18, 2016, the trial court issued a tentative ruling denying Glenair's petition. The court first discussed *Iskanian* and its progeny, stating: "*Iskanian* establishes that a predispute arbitration clause . . . cannot be used to compel arbitration of PAGA claims." Turning to the subject of postdispute waivers, the court stated: "Conceivably, our Supreme Court would allow postdispute arbitration agreements to cover PAGA claims because, at that point, an employee would be represented by counsel who could weigh the benefits and risks of proceeding in arbitration rather than superior court. [¶] In this case, [respondents] were not represented by counsel when they allegedly agreed to arbitration." On October 6, 2016, at the parties' request, the court entered the tentative ruling as its final order.[3]

---

[3] Glenair's notice of appeal was premature, as the appeal was taken from an August 3, 2016 announcement on the trial court's message board that the tentative ruling was the court's order, rather than from a final ruling entered in the court records. (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 54, p. 590 [a ruling does not become effective until filed in writing or entered in the minutes].) However, because respondents did not object to the premature notice of appeal and instead joined Glenair in requesting the entry of a final order, we find good cause to treat the notice as having been filed immediately after the October 6, 2016 (*Fn. is continued on the next page.*)

7

**DISCUSSION**

Glenair challenges the denial of its petition to compel arbitration, arguing that under *Iskanian*, the agreement at issue constituted an enforceable postdispute arbitration agreement encompassing respondents' PAGA claim.  For the reasons discussed below, we affirm the denial because the agreement is an unenforceable predispute agreement.

A.  *Standard of Review*

A petition to compel arbitration is a suit in equity seeking specific performance of an arbitration agreement. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 347.)  Under Code of Civil Procedure section 1281.2, a petition to compel arbitration of a claim may be denied when the arbitration agreement is unenforceable (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 (*Robertson*)) or the claim is not subject to the arbitration agreement (*Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 474 (*Fitzhugh*); see *Sky Sports, Inc. v. Superior Court* (2011) 201 Cal.App.4th 1363, 1367-1368).

Generally, the standard of review applicable to the denial of a petition to compel arbitration is determined by the issues presented on appeal (*Robertson*, *supra*, 132

---

order.  (Cal. Rules of Court, rule 8.104(d)(2)); *Stonewall Ins. Co. v. City of Palos Verdes Estates* (1996) 46 Cal.App.4th 1810, 1827-1828.)

Cal.App.4th at p. 1425). To the extent the denial relies on a pertinent factual finding, we review that finding for the existence of substantial evidence.[4] (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277.) In contrast, to the extent the denial relies on a determination of law, we review the trial court's resolution of that determination de novo. (*Ibid.*) Nonetheless, we are not bound by the trial court's rationale, and thus may affirm the denial on any correct legal theory supported by the record, even if the theory was not invoked by the trial court. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268-269; *Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683, fn. 3; *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 645 & fn. 6; see

---

[4] Glenair was entitled to request a statement of decision regarding the denial, but did not do so. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.) Generally, the failure to request a statement of decision triggers the doctrine of implied factual findings, under which the appellate court "presumes the trial court made all necessary findings supported by substantial evidence." (*Ibid.*) In applying that doctrine, we would ordinarily infer that the trial court resolved contested factual issues -- for example, whether Malissa received the proposed agreement and whether Machele understood it -- in a manner favorable to the trial court's ruling. However, we do not employ the doctrine because -- as we explain below -- the ruling is properly affirmed on a ground established by the record but not set forth in the trial court's order.

*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.*
(1997) 59 Cal.App.4th 6, 15-16.)

The parties disagree regarding the trial court's rationale for its ruling, and thus dispute the applicable standard of review. Their disagreement relates to whether the court actually found that the arbitration agreement in question was a postdispute -- rather than a predispute -- agreement. Glenair asserts that its contention on appeal requires de novo review, arguing that the court correctly recognized the arbitration agreement to be a postdispute agreement, but made an erroneous determination of law, namely, that the agreement was unenforceable because respondents were unrepresented by counsel when they failed to opt out of the proposed agreement. In contrast, respondents maintain that the court's ruling may be affirmed on several grounds requiring different standards of review. Their principal contention is that the court correctly found that the agreement was a predispute agreement unenforceable under *Iskanian*.

A careful reading of the trial court's order reveals that the court did not resolve whether any agreement was predispute or postdispute, but concluded that the "alleged[]" agreement was unenforceable regardless. The court's apparent rationale for the ruling was (1) that if the "alleged[]" agreement was a predispute agreement, it was unenforceable under *Iskanian*, and (2) that if it was a postdispute agreement, it was unenforceable due to an undisputed fact, namely, respondents' lack of representation.

As explained below (see pt. D. of the Discussion, *post*), we conclude that the record discloses an unenforceable predispute agreement.

### B. *PAGA*

We begin by setting forth the relevant elements of PAGA.  Under the Labor Code, the California Labor and Workforce Development Agency (LWDA) and its constituent departments and divisions are authorized to collect civil penalties for specified labor law violations by employers. (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 370 (*Caliber Bodyworks*).)  To enhance the enforcement of the labor laws, the Legislature enacted PAGA.  (*Caliber Bodyworks, supra,* at p. 370.)  PAGA permits aggrieved employees to recover civil penalties that previously could be collected only by the LWDA, as well as newly established "default" penalties.  (*Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 335; *Caliber Bodyworks, supra*, at p. 375; Lab. Code, § 2699, subds. (a), (f).)

Under PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations.  [Citation.][]  Of the civil penalties recovered, 75 percent goes to the [LWDA], leaving the remaining 25 percent for the 'aggrieved employees.'  [Citation.]" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980-981 (*Arias*), fn. omitted.)  As the LWDA has "the initial right to prosecute and collect civil penalties" under the Labor Code, PAGA

11

requires aggrieved employees to provide a specified notice to LWDA before asserting a PAGA claim.  (*Caliber Bodyworks, Inc., supra*, 134 Cal.App.4th at pp. 376-377.)

PAGA actions are "a substitute for an action by the government itself," in which the aggrieved employee acts as "the proxy or agent of the state's labor law enforcement agencies."  (*Arias, supra*, 46 Cal.4th at p. 986.)  As explained in *Iskanian*, "[a] representative PAGA claim is a type of *qui tam* action. 'Traditionally, the requirements for enforcement by a citizen in a *qui tam* action have been (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty.'  [Citation.] The PAGA conforms to these traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation."  (*Iskanian, supra*, 59 Cal.4th at p. 382.)[5]

---

[5]     We observe that *Iskanian* applies the term "representative" to PAGA claims in two distinct ways. *Iskanian* characterizes PAGA claims as representative because they are brought by employees acting as representatives -- that is, as agents or proxies -- of the state. (*Iskanian, supra*, 59 Cal.4th at p. 387.)  *Iskanian* also describes an employee's PAGA claim as representative when it seeks penalties on behalf of other employees.  (*Iskanian, supra,* at pp. 383-384.)  When necessary, we clarify the meaning of "representative" applicable to our analysis.

Labor Code section 2699.3, subdivision (a), sets forth the procedures with which an aggrieved employee must comply in order to commence a PAGA action of the type asserted by respondents.  During the period pertinent here, the required procedures were as follows:  "The aggrieved employee must 'give written notice of the alleged Labor Code violation to both the employer and the [LWDA], and the notice must describe facts and theories supporting the violation.  [Citation.]  If the agency notifies the employee and the employer that it does not intend to investigate . . . , or if the agency fails to respond within 33 days, the employee may then bring a civil action against the employer.  [Citation.]  If the agency decides to investigate, it then has 120 days to do so.  If the agency decides not to issue a citation, or does not issue a citation within 158 days after the postmark date of the employee's notice, the employee may commence a civil action." (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1148-1149, quoting *Arias, supra,* 46 Cal.4th at p. 981.)

Two features of PAGA claims are notable here.  Under the PAGA statutory scheme, an employee authorized to assert a PAGA action is not subject to LWDA supervision. (*Iskanian, supra,* 59 Cal.4th at pp. 389-390.)  In *Iskanian,* our Supreme Court held that the lack of supervision does not contravene the constitutional principle of separation of powers, concluding that in view of scarce budgetary resources, the Legislature's enactment of PAGA represented a legitimate choice "to deputize and incentivize employees

13

uniquely positioned to detect and prosecute [Labor Code] violations." (*Iskanian*, *supra,* at p. 390.) The court rejected the contention that PAGA actions represent an abuse of governmental power, stating that a PAGA plaintiff, like a *qui tam* plaintiff, "has only his or her own resources and may incur significant cost if unsuccessful." (*Iskanian, supra,* at p. 391.)

Furthermore, nothing in the PAGA statutory scheme forecloses separate but similar actions by different employees against the same employer. (*Tan v. GrubHub, Inc.* (N.D. Cal. 2016) 171 F.Supp.3d 998, 1012-1013 (*Tan*).) Our Supreme Court has explained that the doctrine of collateral estoppel, rather than the statutory scheme, shields the employer from an abusive "'one-way intervention,'" that is, a series of PAGA actions by different employees that would continue until some employee prevailed. (*Arias*, *supra*, 46 Cal.4th at pp. 984-987.) Because an employee's PAGA action "functions as a substitute for an action brought by the government itself," under the doctrine of collateral estoppel, a judgment unfavorable to the employee binds the government, as well as all aggrieved nonparty employees potentially entitled to assert a PAGA action. (*Arias, supra,* at p. 986.)

C. *Iskanian*

We turn to the discussion of PAGA claim waivers in *Iskanian*. There, the plaintiff, in the course of his employment, signed an agreement subject to the FAA,

14

providing that all claims arising out his employment were to be submitted to arbitration. (*Iskanian*, *supra*, 59 Cal.4th at p. 360.) The agreement further provided that the parties would not assert representative claims against each other. (*Ibid.*) When the plaintiff alleged claims against his employer for Labor Code violations, including a PAGA claim, the trial court granted the employer's petition to compel arbitration, concluding that the plaintiff was obliged to arbitrate the PAGA claim, and was barred from litigating that claim on behalf of employees other than himself. (*Iskanian, supra*, at pp. 361-362.)

Our Supreme Court examined two related questions, namely, whether arbitration agreements obliging employees to waive their right to bring representative PAGA actions in any forum are unenforceable under state law, and whether the FAA preempts any state law rule precluding such waivers. (*Iskanian*, *supra*, 59 Cal.4th at pp. 382-383.) Regarding the first question, the court held that predispute waivers -- that is, waivers made "before any dispute arises" -- requiring employees as a condition of employment to give up the right to assert a PAGA claim on behalf of other employees, are unenforceable, concluding that they "harm the state's interest in enforcing the Labor Code," and thus are contrary to public policy. (*Iskanian, supra*, at pp. 360-361, 383-384, 388.) Although the court recognized that the plaintiff's waiver potentially permitted him to assert an individualized PAGA claim, the court declined to decide whether such a claim was cognizable, stating that "a

15

prohibition of representative claims" -- that is, claims on behalf of other employees -- "frustrates the PAGA's objectives." (*Iskanian,* at p. 384, italics omitted.)

Regarding the second question, the court held that the FAA did not preempt the state law rule invalidating waivers of the type described above, stating: "[A] PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state,* which alleges directly or through its agents -- either the [LWDA] or aggrieved employees -- that the employer has violated the Labor Code." (*Iskanian*, *supra*, 59 Cal.4th at p. 386.) The court explained: "[T]he FAA aims to promote arbitration of claims belonging to the private parties to an arbitration agreement. It does not aim to promote arbitration of claims belonging to a government agency, and that is no less true when such a claim is brought by a statutorily designated proxy for the agency as when the claim is brought by the agency itself. The fundamental character of the claim as a public enforcement action is the same in both instances." (*Id.* at p. 388.)

Our focus is on the Supreme Court's rationale for limiting its holding to predispute waivers. In examining the extent to which the right to assert a PAGA claim may be waived, the court relied on Civil Code section 1668, which invalidates contracts that exempt their parties from "violation[s] of law," and Civil Code section 3513, which invalidates private contracts that contravene "a law

16

established for a public reason . . . ."[6] (*Iskanian, supra,* 59 Cal.4th at pp. 382-383.)  Applying those statutes, the court determined that a waiver of the right to assert a PAGA claim in any forum "disable[d] one of the primary mechanisms for enforcing the Labor Code" and harmed the state's interests in enforcing that code.  (*Iskanian, supra,* at p. 383.)

The court nonetheless imposed a limit on its determination, stating:  "Of course, employees are free to choose whether or not to bring PAGA actions when they are aware of Labor Code violations.  [Citation.]  But it is contrary to public policy for an employment agreement to eliminate this choice altogether by requiring employees to waive the right to bring a PAGA action before any dispute arises."  (*Iskanian, supra,* 59 Cal.4th at p. 383.)  In support of this remark, the court pointed to footnote 8 in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 103, fn. 8 (*Armendariz*) as authority for the proposition that "waivers freely made after a dispute has

---

[6] Civil Code section 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

Civil Code section 3513 states:  "Any one may waive the advantage of a law intended solely for his benefit.  But a law established for a public reason cannot be contravened by a private agreement."

arisen are not necessarily contrary to public policy." (*Iskanian, supra,* 59 Cal.4th at p. 383.)

The footnote in question occurs in the context of a discussion of the arbitrability of claims under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). In *Armendariz,* two employees executed arbitration agreements as a condition of their employment. (*Armendariz, supra,* 24 Cal.4th at pp. 91-92.) After they asserted FEHA claims against the employer, the trial court denied the employer's petition to compel arbitration, concluding that the agreement was unenforceable. (*Armendariz, supra,* at pp. 92-93.) Applying Civil Code sections 1668 and 3513, our Supreme Court determined that an arbitration agreement may not operate to waive FEHA statutory rights implementing the public policy against discrimination. (*Armendariz, supra,* at pp. 100-101.) The court nonetheless concluded that an agreement to arbitrate FEHA claims was potentially enforceable if it imposed requirements on arbitration sufficient to preserve the unwaiveable FEHA rights. (*Armendariz,* at pp. 102-103.)

In the pertinent footnote in *Armendariz,* the court explained that those requirements related to mandatory employment arbitration agreements. (*Armendariz, supra,* 24 Cal.4th at p. 103, fn. 8.) The court stated: "These requirements would generally not apply in situations in which an employer and an employee knowingly and voluntarily enter into an arbitration agreement after a dispute has arisen. In those cases, employees are free to

determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights." (*Ibid*.)

D. *Analysis*

We confront an issue regarding the waivability of PAGA claims that is distinct from the issue presented in *Iskanian*. There, the employer sought to enforce an employee's waiver of the right to assert a PAGA claim on behalf of other employees in any forum. Here, the arbitration agreement also contains a provision barring such claims, but Glenair's petition to compel arbitration did not attempt to enforce that provision. Rather, before the trial court and on appeal, Glenair has contended only that the agreement obliges respondents to submit their PAGA claim as a whole to arbitration.

In order to resolve Glenair's contention, we must examine the circumstances under which employees may agree to arbitrate PAGA claims, thereby waiving their right to assert those claims in a judicial forum. As discussed further below, at least two appellate courts have concluded that predispute agreements to arbitrate PAGA claims are unenforceable for reasons that we find persuasive. (*Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 445-446 (*Betancourt*); *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 678 (*Tanguilig*).) Accordingly, with respect to waivers of the right to assert a PAGA claim in a judicial forum, the key

issue concerns the boundary between an unenforceable predispute waiver and an enforceable postdispute waiver. The parties have not identified -- and our research had not disclosed -- any decision addressing that issue. However, although *Iskanian* does not draw the boundary in question, it establishes that the boundary is determined by two factors, namely, the employee's capacity to make a knowing and voluntary choice of forum based on an adequate awareness of Labor Code violations supporting a PAGA claim, and the absence of public policy considerations attendant to the loss of the judicial forum (see pt. C. of the Discussion, *ante*).

Those factors dictate that the predispute/postdispute boundary is crossed when the pertinent employee is authorized to commence a PAGA action as an agent of the state. Generally, a waiver of a statutory right is not enforceable unless -- at minimum -- "'it appears that the party executing it ha[s] been fully informed of the existence of that right, its meaning, [and] the effect of the "waiver" presented to him'" (*Hittle v. Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 389, quoting *Bauman v. Islay Investments* (1973) 30 Cal.App.3d 752, 758). Only after employees have satisfied the statutory requirements for commencing a PAGA action are they in a position "to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights." (*Armendariz, supra*, 24 Cal.4th at p. 103, fn. 8.) Prior to that point, the employees either have

submitted no allegations of Labor Code violations to LWDA, or have done so, but await LWDA's determination regarding the extent to which LWDA itself will resolve the allegations (see *Tan*, *supra*, 171 F.Supp.3d at p. 1012 [explaining that PAGA bars employee from asserting claim based on a violation for which LWDA has cited employer]). Accordingly, before meeting the statutory requirements for commencing a PAGA action, employees do not know which alleged violations -- if any -- they are authorized to assert in the action. Enforcing a waiver secured at that time would effectively dictate a choice of forum the employee did not knowingly make.

Enforcing a waiver executed before the employee has satisfied the statutory requirements would also impair PAGA's enforcement mechanism. As explained below, until the employee meets those requirements, the state -- through LWDA -- retains control of the right underlying the employee's PAGA claim. For that reason, enforcing the arbitration agreement would contravene the state's control over that right.

Although *Iskanian* did not expressly examine the circumstances under which parties may lawfully agree to subject PAGA claims to arbitration, it characterized a PAGA claim as a dispute between the state and the employer, in which the plaintiff acts as the agent of the state.[7] (*Iskanian*,

_____

[7] We recognize that in *Iskanian*, the court, in remanding the matter before it for further proceedings, suggested that

(*Fn. is continued on the next page.*)

*supra*, 59 Cal.4th at pp. 386-389.) Following *Iskanian*, two appellate courts have concluded that a predispute agreement to arbitrate is ineffective to compel arbitration of a PAGA claim, as the employee who signs the agreement is not then authorized to waive the state's right to a judicial forum. (*Betancourt*, *supra*, 9 Cal.App.5th at pp. 445-448; [PAGA action not subject to arbitration, as state not bound by employee's predispute agreement]; *Tanguilig*, *supra*, 5 Cal.App.5th at pp. 677-680 [PAGA claim cannot be arbitrated pursuant to predispute arbitration agreement without state's consent].) We agree.

In *Iskanian*, our Supreme Court explained that "*every* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee -- the plaintiff bringing the action -- or as to other employees as well, is a representative action on behalf of the state." (*Iskanian*,

_____

the parties might properly agree to arbitration of the plaintiff's PAGA claim, stating: "[The defendant] must answer the representative PAGA claim[]"-- that is, the claim seeking penalties on behalf of the plaintiff and other employees -- "in some forum." (*Iskanian*, *supra*, 59 Cal.4th at p. 391.) Neither these remarks, nor any others in *Iskanian*, purport to address when an agreement to arbitrate a PAGA claim constitutes an enforceable postdispute agreement, as they are unaccompanied by any discussion of that issue. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 243 ["[A]n opinion is not authority for an issue not considered therein"].)

*supra*, 59 Cal.4th at p. 387, quoting *id.* at p. 394, conc. opn. of Chin, J.) A PAGA action is thus ultimately founded on a right belonging to the state, which -- though not named in the action -- is the real party in interest. (*Iskanian, supra*, at p. 387.) That is because PAGA does not create any new substantive rights or legal obligations, but "is simply a procedural statute allowing an aggrieved employee to recover civil penalties -- for Labor Code violations -- that otherwise would be sought by state labor law enforcement agencies." (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.)

Ordinarily, when a person who may act in two legal capacities executes an arbitration agreement in one of those capacities, the agreement does not encompass claims the person is entitled to assert in the other capacity. (*Fitzhugh, supra*, 150 Cal.App.4th at pp. 474-475 [son who executed arbitration agreement for father did not subject his own claims as an individual to arbitration]; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [corporate officer who executed arbitration agreement as agent for the corporation did not subject his claims as individual to arbitration]; see *Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374, 377 [daughter who executed arbitration agreement relating to mother's medical treatment solely as party responsible for mother's medical payments, and not as mother's agent, did not subject mother's claims to arbitration].) That rule reflects general principles regarding the significance of legal capacities. (*Benasra, supra*, at p. 990.)

23

Under the rule set forth above, an arbitration agreement executed before an employee meets the statutory requirements for commencing a PAGA action does not encompass that action. Prior to satisfying those requirements, an employee enters into the agreement as an individual, rather than as an agent or representative of the state. As an individual, the employee is not authorized to assert a PAGA claim; the state -- through LWDA -- retains control of the right underlying any PAGA claim by the employee. Thus, such a predispute agreement does not subject the PAGA claim to arbitration. (See *Betancourt*, *supra*, 9 Cal.App.5th at p. 448; *Tanguilig, supra,* 5 Cal.App.5th at pp. 677-680; *Mikes v. Strauss* (S.D.N.Y. 1995) 889 F.Supp. 746, 755 [arbitration agreement plaintiff executed as an individual did not encompass plaintiff's *qui tam* claim as a "private representative of the government" because "the government was not a party to the [a]greement"].) For that reason, enforcing any such agreement would impair PAGA's enforcement mechanism.

Here, the record establishes that Glenair distributed the proposed agreement to respondents and other employees in July 2014, long before respondents initiated the procedure for becoming the state's agents by submitting a notice of Labor Code violations to the LWDA in April 2015. As the proposed agreement required employees to opt out within 30 days, it necessarily constituted a predispute arbitration agreement with respect to respondents' PAGA action. The court thus did not err in declining to enforce it.

24

Glenair maintains that the arbitration agreement must be regarded as an enforceable postdispute agreement, arguing that the agreement described the Labor Code violations and PAGA claim alleged in the *Rojas* action, and that respondents' action asserts an essentially similar PAGA claim. According to Glenair, the *Rojas* action and the underlying action involve the same dispute, for purposes of classifying the agreement as "predispute" or "postdispute." The crux of Glenair's contention is that after the *Rojas* plaintiff was authorized to assert a PAGA claim against Glenair and Glenair's other employees received suitable notice of that fact, the predispute/postdispute boundary was crossed with respect to all the other employees, including respondents, relating to any similar PAGA claim by them. We disagree.

In our view, under the principles and public policy considerations set forth in *Iskanian*, the classification of an agreement as "predispute" or "postdispute" must be made by reference to the point at which an individual employee acquires the status of the state's agent. Although *Iskanian* characterized a PAGA claim as a dispute between the state and an employer, it identified the PAGA plaintiff as the state's agent in the resolution of the dispute. (*Iskanian*, *supra*, 59 Cal.4th at pp. 386-387.) As noted above (see pt. B. of the Discussion, *ante*), PAGA does not foreclose separate but similar actions by different employees against the same employer. PAGA thus permits the state -- through LWDA --

25

to designate more than one employee to act as its agent in a dispute with a particular employer.

Because those employees must individually satisfy the statutory requirements in order to assert a PAGA claim, the principles set forth in *Iskanian* dictate that with respect to each such employee, LWDA retains control of the right underlying *that* employee's PAGA claim until the employee meets the requirements for becoming the state's agent. Accordingly, with respect to each such employee, an arbitration agreement executed prior to the satisfaction of those requirements cannot encompass the employee's PAGA claim, as the employee is not then the state's agent.

We thus reject Glenair's contention that the *Rojas* action and respondents' action represent the same dispute, for purposes of determining whether the arbitration agreement constituted an enforceable postdispute agreement. Specifically, we reject the contention that once the *Rojas* plaintiff was authorized to assert a PAGA claim, the arbitration agreement barred all other employees not so authorized -- including respondents -- from initiating PAGA actions, even though they were not then designated as the state's agents to assert any specific claim. To accept Glenair's position would be to significantly impair PAGA's enforcement mechanism, which permits the state to act through more than one employee with respect to a PAGA claim against a particular employer. In sum, the trial court

26

did not err in denying Glenair's petition to compel arbitration.[8]

---

[8] In view of our conclusion, it is unnecessary to examine additional potential grounds for affirming the trial court's ruling identified in respondents' brief.

## DISPOSITION

The order denying appellants' petition to compel arbitration is affirmed.  Respondents are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.