Filed 12/15/20  Padilla v. Dewey Services CA2/4
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| GUILLERMO PADILLA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEWEY SERVICES, INC.,<br><br>    Defendant and Appellant. | B302920<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV15617) |

APPEAL from an order of the Superior Court for Los Angeles County, Elizabeth Allen White, Judge.  Affirmed.

Hill, Farrer & Burrill, James A. Bowles and Elissa L. Gysi for Defendant and Appellant.

KJT Law Group, Vache A. Thomassian, Caspar Jivalagian; Adams Employment Counsel and Christopher A. Adams for Plaintiff and Respondent.

Defendant Dewey Services, Inc. (Dewey) appeals from the trial court's order denying its motion to compel arbitration of a claim for civil penalties for wage-and-hour law violations brought by plaintiff Guillermo Padilla under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq., hereafter, PAGA). Dewey's primary contention on appeal—that it is error to find an employee cannot be compelled to arbitrate PAGA claims based upon the employee's predispute agreement to arbitrate—is one that has been rejected by several courts of appeal, including this one. Dewey argues that those cases, all of which relied upon the reasoning of the Supreme Court in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) in reaching their conclusions, were wrongly decided because the courts misread the holding in *Iskanian*, which holding Dewey asserts was "reaffirmed and clarified" in the subsequent case of *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175 (*ZB*).

We find the reasoning of the prior appellate court cases sound, and that *ZB* has no effect on that reasoning. We also find that neither of the remaining arguments Dewey raises—that the trial court's ruling conflicts with and is preempted by the Federal Arbitration Act (9 U.S.C. § 2 et seq., hereafter, FAA), and that the trial court erred by failing to find that the parties' arbitration agreement delegated the question of arbitrability to the arbitrator—has merit. Accordingly, we affirm the order denying the motion to compel arbitration.

## BACKGROUND

Padilla was employed by Dewey from June 2018 to November 2018. At the start of his employment, Padilla (like all employees of Dewey) was required to sign agreements to arbitrate all disputes with Dewey. As a result, Padilla was subject to Dewey's written "Mutual Arbitration Policy" (MAP) throughout his employment.

The MAP, which "require[s] mandatory, binding arbitration of disputes," states that it "applies to Company employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with the Company or the termination of that employment." It provides examples of the types of disputes it covers, and includes "claims by employees for . . . wage or overtime claims or other claims under the Labor Code."

In explaining what the obligation to arbitrate claims means, the MAP states: "This mutual obligation to arbitrate claims means that both you and the Company are bound to use the MAP as the only means of resolving any employment-related disputes. This mutual agreement to arbitrate claims also means that both you and the Company forego any right either may have to a judicial forum or a jury trial on claims relating in any way to your employment. The arbitration shall be a traditional bilateral arbitration with you and the Company as the parties unless otherwise specifically agreed to in writing.[1] Each party waives the right to initiate or proceed on a class action basis or

---

[1] The MAP subsequently explains that "[t]he parties in any . . . arbitration will be limited to you and the Company, unless you and the Company agree otherwise in writing."

3

participate in a class action in arbitration. No remedies that otherwise would be available to you individually or to the Company in a court of law, however, will be forfeited by virtue of this agreement to use and be bound by the MAP." Finally, the MAP provides that it is governed solely by the FAA, and that the National Rules for the Resolution of Employment Disputes of the American Arbitration Association (the AAA rules) would govern the procedures used in the arbitration.

In May 2019, Padilla filed in the superior court a class action complaint for damages and for enforcement under PAGA, alleging violations of various wage-and-hour laws. At the initial status conference, counsel for Padilla made an oral request to pursue only the PAGA claims, which the trial court granted. Padilla subsequently filed a first amended complaint alleging only a representative claim on behalf of the State of California and other aggrieved employees under PAGA, and seeking only civil penalties.

On September 30, 2019, Dewey filed a motion to compel arbitration and to stay the action pending arbitration, making essentially the same arguments it makes in this appeal. Padilla opposed the motion, relying on the Supreme Court's reasoning in *Iskanian* that a claim for civil penalties under PAGA belongs to the State of California, with the plaintiff acting as a proxy for the state. (*Iskanian*, *supra*, 59 Cal.4th at p. 388.) As such, Padilla's lawsuit involved a dispute or claim between the state and Dewey, rather than between Padilla and Dewey, and the state did not agree to arbitrate its claim. In addition, Padilla argued that the court should decide the

4

issue of arbitrability because the parties did not clearly and unmistakably delegate that question to the arbitrator.

The trial court denied the motion, noting that several courts of appeal have decided the issue and uniformly have held that "'an employee's predispute agreement to arbitrate PAGA claims is not enforceable without the state's consent.'" (Quoting *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 621 (*Correia*), trial court's bolding omitted.) The court specifically rejected Dewey's assertion that *Correia* and the cases it relied upon no longer were applicable in light of the recent Supreme Court case of *ZB*, *supra*, 8 Cal.5th 175, concluding that *ZB* did not change the result.

Dewey timely filed a notice of appeal from the trial court's order denying its motion to compel arbitration.

## DISCUSSION

As noted, Dewey contends on appeal that the trial court erred by finding that Padilla's predispute agreement to arbitrate all disputes with Dewey is unenforceable as to Padilla's PAGA claim. It also contends the court's finding conflicts with and is preempted by the FAA, and that the issue of arbitrability must be determined by the arbitrator under the agreement. None of those contentions prevail.

A.      *The Reasoning of the Prior Appellate Cases Was, and Remains, Sound*

To understand the issues in this case we must begin our discussion, as we did in *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th

853 (*Julian*)—one of the cases criticized by Dewey—by setting forth the relevant elements of PAGA. We then address the Supreme Court's reasoning in *Iskanian* and how it leads to the holdings in *Julian* and the other appellate court decisions Dewey challenges. Finally, we address the effect, if any, of the Supreme Court's decision in *ZB* on the holding of those cases.

### 1. *PAGA*

"Under the Labor Code, the Labor and Workforce Development Agency (LWDA) and its constituent departments and divisions are authorized to collect civil penalties for specified labor law violations by employers. [Citation.] To enhance the enforcement of the labor laws, the Legislature enacted PAGA. [Citation.] PAGA permits aggrieved employees to recover civil penalties that previously could be collected only by the LWDA, as well as newly established 'default' penalties. [Citations.]

"Under PAGA, 'an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. [Citation.] Of the civil penalties recovered, 75 percent goes to the [LWDA], leaving the remaining 25 percent for the "aggrieved employees." [Citation.]' [Citation.]" (*Julian, supra*, 17 Cal.App.5th at p. 865.)

Because the LWDA has "the initial right to prosecute and collect civil penalties" under the Labor Code (*Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 376, disapproved on

6

another ground by *ZB*, *supra*, 8 Cal.5th at p. 195), an aggrieved employee wishing to bring a PAGA claim must first give written notice of the alleged violations to the LWDA (along with a filing fee) and to the employer.  (Lab. Code, § 2699.3, subd. (a)(1)(A).)  The LWDA must then notify the aggrieved employee and employer whether it intends to investigate the alleged violation; if it does not intend to investigate, or if the aggrieved employee does not receive any notification within 65 days, or if the LWDA investigates and decides not to issue a citation, the aggrieved employee may commence a civil action.  (Lab. Code, § 2699.3, subd. (a)(2)(A).)  Within 10 days after commencement of the action, the aggrieved employee must provide the LWDA with a file-stamped copy of the complaint.  (Lab. Code, § 2699, subd. (l)(1).)  Any proposed settlement of the action must be submitted to the LWDA and the trial court, and the court must approve the settlement.  (Lab. Code, § 2699, subd. (l)(2).)  The employee also must submit to the LWDA a copy of the judgment, as well as any order that either provides for or denies an award of civil penalties.  (Lab. Code, § 2699, subd. (l)(3).)

"PAGA actions are 'a substitute for an action brought by the government itself,' in which the aggrieved employee acts as 'the proxy or agent of the state's labor law enforcement agencies.'  [Citation.]  As explained in *Iskanian*, '[a] PAGA representative action is therefore a type of *qui tam* action.  "Traditionally, the requirements for enforcement by a citizen in a *qui tam* action have been (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty."  [Citation.]  The PAGA conforms to these

7

traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' [Citation.]" (*Julian, supra,* 17 Cal.App.5th at pp. 865-866.) And, "[b]ecause an employee's PAGA action 'functions as a substitute for an action brought by the government itself,' under the doctrine of collateral estoppel, a judgment unfavorable to the employee binds the government, as well as all aggrieved nonparty employees potentially entitled to assert a PAGA action." (*Id.* at p. 867.)

2.  *Iskanian*

In *Iskanian*, the plaintiff filed a complaint against his employer alleging claims for Labor Code violations, including a PAGA claim. The plaintiff had signed an agreement, subject to the FAA, providing that all claims arising out of his employment were to be submitted to arbitration, and specifically precluding representative claims. Based upon that agreement, the trial court granted the employer's petition to compel arbitration, finding that the plaintiff was required to arbitrate the PAGA claim, which the court concluded he could litigate only on behalf of himself. (*Iskanian, supra,* 59 Cal.4th at pp. 360-362.) The Supreme Court held that (1) "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy"; and (2) "the FAA does not preempt a state law that prohibits waiver of PAGA representative actions in an employment contract." (*Id.* at p. 360.)

In reaching its first holding, the Supreme Court observed that "the Legislature's purpose in enacting the PAGA was to augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the [LWDA]. Thus, an agreement by employees to waive their right to bring a PAGA action serves to disable one of the primary mechanisms for enforcing the Labor Code. Because such an agreement has as its 'object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law,' it is against public policy and may not be enforced." (*Iskanian*, *supra*, 59 Cal.4th at p. 383.)

In reaching its second holding, the Supreme Court pointed to the focus of the FAA, which is "to ensure an efficient forum for the resolution of *private* disputes." (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) However, "a PAGA claim . . . is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [LWDA] or aggrieved employees—that the employer has violated the Labor Code. Through his PAGA claim, Iskanian is seeking to recover civil penalties, 75 percent of which will go to the state's coffers. We emphasized in *Arias* [*v. Superior Court* (2009) 46 Cal.4th 969 (*Arias*)] that 'an action to recover civil penalties "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties"'; that '[i]n a lawsuit brought under the [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies'; and that 'an aggrieved employee's action under the [PAGA] functions as a substitute for an

action brought by the government itself.' [Citing *Arias, supra*, 46 Cal.4th at p. 986.] The fact that any judgment in a PAGA action is binding on the government confirms that the state is the real party in interest." (*Iskanian, supra*, 59 Cal.4th at pp. 386-387.) The court concluded: "In sum, the FAA aims to promote arbitration of claims belonging to the private parties to an arbitration agreement. It does not aim to promote arbitration of claims belonging to a government agency, and that is no less true when such a claim is brought by a statutorily designated proxy for the agency as when the claim is brought by the agency itself. . . . We conclude that California's public policy prohibiting waiver of PAGA claims, whose sole purpose is to vindicate the [LWDA's] interest in enforcing the Labor Code, does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution." (*Iskanian, supra*, 59 Cal.4th at pp. 388-389.)

### 3. *Prior Appellate Cases*

After *Iskanian* was decided, several courts of appeal relied upon the Supreme Court's reasoning with regard to FAA preemption to conclude that a predispute agreement between an employer and employee to arbitrate PAGA claims is not enforceable without the consent of the state. For example, in *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665 (*Tanguilig*), Division Five of the First Appellate District relied upon the Supreme Court's statements that "[t]he government entity on whose behalf the plaintiff files [a PAGA]

10

suit is always the real party in interest in the suit" (*Iskanian*, *supra*, 59 Cal.4th at p. 382), and that "'*every* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee— the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state'" (*id.* at p. 387), to conclude that "a PAGA plaintiff's request for civil penalties . . . is not subject to arbitration under a private arbitration agreement between the plaintiff and his or her employer . . . because the real party in interest in a PAGA suit, the state, has not agreed to arbitrate the claim." (*Tanguilig*, *supra*, 5 Cal.App.5th at p. 677; see also *id.* at p. 678 ["Because a PAGA plaintiff, whether suing solely on behalf of himself or herself or also on behalf of other employees, acts as a proxy for the state only with the state's acquiescence . . . and seeks civil penalties largely payable to the state via a judgment that will be binding on the state, a PAGA claim cannot be ordered to arbitration without the *state's* consent"].)

Similarly, in *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439 (*Betancourt*), Division Two of the Fourth Appellate District relied upon the Supreme Court's statement that a PAGA claim "is not a dispute between an employer and an employee arising out of their contractual relationship[, i]t is a dispute between an employer and the *state*" (*Iskanian*, *supra*, 59 Cal.4th at p. 386) to conclude that a predispute agreement by an employee to arbitrate an employment dispute does not apply to a PAGA claim brought on behalf of the state. (*Betancourt*, *supra*, 9 Cal.App.5th at pp. 447-448.)

11

We found the conclusions of those two appellate courts persuasive in *Julian*, *supra*, 17 Cal.App.5th 853. There, our focus was on determining whether an agreement to arbitrate PAGA claims, entered into after a dispute between two employees and their employer had arisen but before the employees had satisfied the pre-filing requirements under PAGA, was enforceable under *Iskanian*. After conducting a thorough analysis of the Supreme Court's reasoning, we found that "[e]nforcing a waiver executed before the employee has satisfied the statutory requirements would . . . impair PAGA's enforcement mechanism." (*Julian*, *supra*, 17 Cal.App.5th at p. 870.) We concluded: "[U]ntil the employee meets those requirements, the state—through LWDA—retains control of the right underlying the employee's PAGA claim. For that reason, enforcing the arbitration agreement would contravene the state's control over that right." (*Id*. at pp. 870-871.) Thus, we held that an arbitration agreement entered into by an employee as an individual before he or she meets the statutory requirements and becomes a representative of the state is a predispute agreement that does not subject a PAGA claim to arbitration. (*Id*. at p. 872.)

In all three of these cases, the arbitration agreements were construed to waive representative claims (such as PAGA claims) in any forum, although the agreement in *Julian* allowed arbitration of private attorney general claims, but only to resolve the claim of the individual employee. (*Tanguilig*, *supra*, 5 Cal.App.5th at p. 672, fn. 2; *Betancourt*, *supra*, 9 Cal.App.5th at p. 443; *Julian*, *supra*, 17 Cal.App.5th 861 & fn.

2.) More recently, in *Correia, supra,* 32 Cal.App.5th 602, Division One of the Fourth Appellate District addressed the conclusions reached by the courts in *Tanguilig, Betancourt,* and *Julian* in the context of an arbitration agreement that is construed to require arbitration of representative PAGA claims, i.e., an agreement that allows PAGA claims in some forum. (*Correia, supra,* 32 Cal.App.5th at p. 621.)

The *Correia* court agreed with the analysis of the prior appellate courts that "a PAGA arbitration requirement in a predispute arbitration agreement is unenforceable based on *Iskanian*'s view that the state is the real party in interest in a PAGA claim," and held that the analysis applied to the circumstances before it. (*Correia, supra,* 32 Cal.App.5th at p. 609.) The court examined decisions by federal courts that had reached a different conclusion, but it found those decisions "unpersuasive because the courts did not fully consider the implications of the qui tam nature of a PAGA claim on the enforceability of an employer-employee arbitration agreement." (*Ibid.*; see also *id.* at pp. 623-624.)

4.    *Effect of ZB on Holdings of Prior Appellate Cases*

Based upon the analyses of *Tanguilig, Betancourt, Julian,* and *Correia,* the answer to Dewey's first question on appeal—"Did the trial court err in holding that claims brought by an employee under [PAGA] cannot be compelled to arbitration based on the employee's predispute agreement to arbitrate"—clearly is "No." Dewey argues, however, that the courts in those cases (including this court) misapplied the holding of

*Iskanian*, which Dewey contends the Supreme Court "clarified" in *ZB* when it stated: "we held [in *Iskanian*] that a court may not enforce an employee's alleged predispute waiver of the right to bring a PAGA claim in any forum." (*ZB*, *supra*, 8 Cal.5th at p. 181.) Dewey asserts that *Iskanian* does not bar arbitration of PAGA claims, but rather bars only predispute waivers of the right to seek PAGA civil penalties in any forum. It also points to several federal cases that have held that *Iskanian* does not preclude arbitration of PAGA claims.

Dewey's argument misses the point. We (in *Julian*), and the courts in *Tanguilig*, *Betancourt*, and *Correia*, did not conclude that arbitration of PAGA claims was barred under the holding of *Iskanian*. Rather, based upon the Supreme Court's reasoning in *Iskanian* as to why the FAA does not apply to PAGA claims—particularly the court's statements that "the state is the real party in interest" in a PAGA action (*Iskanian*, *supra*, 59 Cal.4th at p. 387) and that a PAGA claim "is not a dispute between an employer and an employee arising out of their contractual relationship[, but is instead] a dispute between an employer and the *state*" (*id.* at p. 386)—we and the other appellate courts simply held that a predispute agreement to arbitrate cannot be enforced with respect to a PAGA claim without the state's consent, given either directly by the state or through its agent after that agent has been authorized by the state to bring such a claim. The federal court decisions Dewey cites do not persuade us that this holding is incorrect. None of those cases addresses the fact (as we explained in *Julian*) that, until an employee satisfies the statutory requirements under PAGA,

14

"the state—through LWDA—retains control of the right underlying the employee's PAGA claim." (*Julian*, *supra*, 17 Cal.App.5th at pp. 870-871.) Thus, until the state authorizes the employee to bring a PAGA claim as a representative of the state, the employee has no legal capacity to agree to arbitrate that claim. (*Id.* at pp. 871-872 ["Ordinarily, when a person who may act in two legal capacities executes an arbitration agreement in one of those capacities, the agreement does not encompass claims the person is entitled to assert in the other capacity. . . . [¶] . . . Prior to satisfying those requirements, an employee enters into the [arbitration] agreement as an individual, rather than as an agent or representative of the state"].)

Contrary to Dewey's assertion, there is nothing in the Supreme Court's recent decision in *ZB* that affects our, or the other appellate courts', prior analyses. To be sure, the court in *ZB* stated, as Dewey asserts, that it had held in *Iskanian* "that a court may not enforce an employee's alleged predispute waiver of the right to bring a PAGA claim in any forum." (*ZB*, *supra*, 8 Cal.5th at p. 181.) But that holding from *Iskanian* was not the focus of the court's opinion. Rather, the court sought to determine whether a plaintiff may seek to recover underpaid wages in a PAGA action. (See *ibid.* ["We granted review to decide whether *Iskanian* controls, and the FAA has no preemptive force, where an aggrieved employee seeks the 'amount sufficient to recover underpaid wages' in a PAGA action. [¶] But to resolve this case we must answer a more fundamental question: whether a plaintiff may seek that amount in a PAGA action at all"].) The court simply did not

address the reasoning in *Iskanian* relied upon in *Tanguilig*, *Betancourt*, *Julian*, and *Correia*.

In sum, we conclude the trial court did not err in relying upon *Correia* to find that Padilla's predispute agreement to arbitrate was not enforceable as to his PAGA claim, and to deny Dewey's motion to compel arbitration.

B.    *Preemption by the FAA*

Dewey's contention that the FAA preempts any state law rule that finds that predispute arbitration agreements are unenforceable as to PAGA claims has been addressed and rejected by the Supreme Court in *Iskanian*. As the court explained, "a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [LWDA] or aggrieved employees—that the employer has violated the Labor Code." (*Iskanian*, *supra*, 59 Cal.4th at pp. 386-387.) Dewey's contention has no merit.

C.    *Determination of Arbitrability*

Dewey contends that under the arbitration agreement and the AAA Rules, which are incorporated by reference into the agreement, the determination of arbitrability of Padilla's PAGA claim must be determined by the arbitrator, and not by the trial court. Padilla argues that the question whether a dispute is subject to arbitration is to be

16

determined by the court unless the parties "clearly and unmistakably" delegate this determination to the arbitrator; he contends the arbitration agreement in this case did not do so. (Citing *Ajamian v. CantorCO2e* (2012) 203 Cal.App.4th 771, 781-782, 790.) We need not decide whether the arbitration agreement, with its incorporation of the AAA rules, delegated the arbitrability determination to the arbitrator because Padilla is not a party to the agreement in his capacity as agent or proxy for the state.

As we explained in *Julian*, an employee who enters into an arbitration agreement before satisfying the statutory requirements to bring a PAGA claim "enters into the agreement as an individual, rather than as an agent or representative of the state." (*Julian*, *supra*, 17 Cal.App.5th at p. 872.) And, "when a person who may act in two legal capacities executes an arbitration agreement in one of those capacities, the agreement does not encompass claims the person is entitled to assert in the other capacity." (*Id.* at pp. 871-872.)

Since Padilla entered into the arbitration agreement in this case before he was given the authority to act as an agent or representative of the state to bring a PAGA claim, he was not a party to the agreement in his capacity of agent of the state. As we explained in *Benaroya v. Willis* (2018) 23 Cal.App.5th 462, even where an arbitration agreement unambiguously provides that the arbitrator is to determine arbitrability, "California case law is clear that 'an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement. [Citation.] The question of whether a

17

nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance.'" (*Id.* at p. 469.)

Because Padilla was acting in his capacity as agent of the state in bringing the PAGA claim, and he was not a party to the arbitration agreement in that capacity, the trial court properly determined the arbitrability of the PAGA claim.

## DISPOSITION

The order denying Dewey's motion to compel arbitration is affirmed. Padilla shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.


COLLINS, J.


18