Filed 3/1/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROBINA CONTRERAS et al., | B307025 |
| Petitioners, | (Los Angeles County Super. Ct. No. 19STCV43062) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| ZUM SERVICES, INC., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Dennis J. Landin, Judge. Petition granted.

Lichten & Liss-Riordan, Shannon Liss-Riordan and Anne Kramer for Petitioners.

No appearance for Respondent.

Littler Mendelson, K. Kayvan Iradjpanah and Ashley J. Brick for Real Party in Interest.

_____

## INTRODUCTION

Petitioners Robina Contreras and Gabriel Ets-Hokin filed suit against Zum Services, Inc. (Zum) under the Private Attorneys General Act (PAGA). (Lab. Code, § 2699 et seq.)[1]

Petitioners alleged Zum misclassified them and others as independent contractors, thereby violating multiple provisions of the California Labor Code. Zum moved to compel arbitration based on agreements petitioners had signed at the beginning of their employment. The trial court granted the motion, ordering into arbitration "the issue of arbitrability" of petitioners' suit – whether they are "aggrieved employees" entitled to raise PAGA claims. Petitioners now challenge the trial court's order, arguing that the delegation of that question to an arbitrator frustrates the purpose of PAGA and is therefore prohibited under California law. We agree and reverse the order compelling arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Zum's Terms of Service Agreement

Zum is a transportation service, designed to allow customers to schedule rides for children using the Zum website or phone application. Upon logging in the first time, new Zum drivers are expected to sign the Zum Terms of Service Agreement (Agreement).

The Agreement contains what appears to be a mutual dispute resolution provision that requires drivers to resolve disputes through final and binding arbitration: "[Y]ou and Zum waive your rights to a jury trial and to have any dispute arising out of or related to these Terms or our Service resolved in court.

---

[1] Undesignated statutory references that follow are to the Labor Code.

2

Instead, all disputes arising out of or relating to these Terms or our Service will be resolved through confidential binding arbitration held in San Mateo County, California in accordance with the Streamlined Arbitration Rules and Procedures ('Rules') of the Judicial Arbitration and Mediation Services ('JAMS'), which are available on the JAMS website and hereby incorporated by reference."[2]  The Agreement also requires drivers to waive their right to bring a class action:  "You and Zum agree that any dispute arising out of or related to these Terms or our Service is personal to you and Zum and that any dispute will be resolved solely through individual arbitration and will not be brought as a class arbitration, class action or any other type of representative proceeding."

The Agreement gives the arbitrator "exclusive authority to make all procedural and substantive decisions regarding any dispute and to grant any remedy that would otherwise be available in court; provided, however, that the arbitrator does not have the authority to conduct a class arbitration or a representative action, which is prohibited by these Terms."  The JAMS Streamlined Arbitration Rules and Procedures, incorporated by reference, state in relevant part:  "Jurisdictional and *arbitrability* disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." (Italics added.)

---

[2]  Certain claims are exempted from arbitration, but those claims are not relevant to this appeal.

Contreras began driving for Zum in October 2018; Ets-Hokin started in June 2019. Both assented to the terms of the Agreement.

## 2. *Petitioners' Lawsuit Against Zum and the Motion to Compel Arbitration*

On March 23, 2020, petitioners filed the operative first amended complaint against Zum, raising a single cause of action pursuant to PAGA.[3] The complaint alleged that Zum had misclassified them as independent contractors and, as a result, Zum violated multiple provisions of the California Labor Code and other statutes and regulations protecting California employees. Specifically, petitioners claimed Zum willfully misclassified drivers as independent contractors in violation of section 226.8[4]; failed to reimburse drivers for expenses incurred while working in violation of section 2802 and Wage Order No. 9; failed to ensure that drivers receive minimum wage for all hours worked in violation of sections 1194 and 1197 ; failed to pay drivers the appropriate overtime premium for all overtime hours worked in violation of sections 510, 554, 1194, and 1198; and required drivers to sign illegal contracts in violation of section 432.5.

---

[3] The original complaint was filed on November 27, 2019. The first amended complaint added Ets-Hokin as a representative plaintiff.

[4] Section 226.8 provides in part:
"(a) It is unlawful for any person or employer to engage in any of the following activities:
"(1) Willful misclassification of an individual as an independent contractor."

4

On April 21, 2020, Zum filed its motion to compel arbitration, citing the Agreement's provisions waiving class actions and agreeing to submit claims to binding arbitration. Petitioners opposed the motion, arguing that PAGA claims cannot be compelled into individual arbitration. In reply, Zum again emphasized the terms of the Agreement and also raised the argument that the "threshold issue" of whether petitioners were employees and thus eligible to raise PAGA claims should be decided in arbitration.

### 3. *Ruling on the Motion to Compel Arbitration*

On July 22, 2020, the trial court granted Zum's motion. In its ruling, the court relied on California public policy that favors resolving conflicts through arbitration, and Code of Civil Procedure section 1281.2, which directs courts to order the parties to arbitrate a controversy if an agreement to arbitrate the controversy exists. The court relied on cases that support the general rule that arbitrators should decide the issue of arbitrability if there is an enforceable delegation clause in an agreement. (*Rent-A-Center, W., Inc. v. Jackson* (2010) 561 U.S. 63, 68-69; *Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 239.) The court found that the delegation clause here was enforceable, with "clear and unmistakable" terms.

Although the court acknowledged that *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602 (*Correia*) held PAGA claims are not arbitrable unless the state consents (*Correia,* at pp. 624-625), it found *Correia* inapplicable. According to the court, "the PAGA statute and the case law expressly require the claims to be brought by aggrieved 'employees,' . . . [and u]nlike cases cited [by petitioners where] claims were undisputedly

5

brought by employees, the present case is on the very issue of whether [petitioners] should be classified as independent contractors or employees.' " The court added that "[t]here is no California law yet regarding whether PAGA claims on [the] misclassification issue cannot be delegated," and found that the issue was properly delegated to an arbitrator.

**4.    *Writ Proceedings***

Petitioners filed a petition for writ of mandate in this court, challenging the trial court's order granting the motion to compel arbitration. Zum filed a preliminary opposition. On August 25, 2020, we issued an order to show cause before this court why the relief sought in the petition should not be granted. Zum filed a return and petitioners a reply.

## *DISCUSSION*

## 1.    *Overview of the Parties' Contentions*

Petitioners' writ petition is founded on a fairly straightforward argument: Our Supreme Court in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) and several Courts of Appeal are uniform in holding that PAGA claims are not waivable and are not arbitrable. Under that case law and in light of the very nature of a PAGA claim, a court – not an arbitrator – must decide all aspects of the claim. The only exception is when the state, as real party in interest, has consented to arbitration. The state did not consent here.

Zum argues PAGA is subject to the Federal Arbitration Act (FAA) and *Iskanian* is no longer good law. But its more tailored assertion is: The trial court did not order the PAGA claim to arbitration. It only compelled a single antecedent fact or "gateway issue" to be arbitrated: whether petitioners are

6

employees, which they must be to have standing under PAGA, or independent contractors, and thus ineligible to bring a PAGA claim. Zum contends that, by virtue of the delegation clause of the Agreement and its incorporation of JAMS rules, "jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement . . . and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." *Iskanian* and most other appellate opinions are beside the point.

We discuss first the standard of review. Next, we summarize how PAGA operates. Then we consider whether PAGA claims are subject to the FAA, whether they may be waived, and whether they may be arbitrated without the state's consent. We then apply these principles to Zum's argument that the gateway issue of whether petitioners are employees or independent contractors is subject to arbitration.

## 2.    *Standard of Review*

Standards of review of orders on a motion to compel arbitration are not uniform. (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 839-840.) Generally, if the trial court's order rests on a factual determination, the appellate court adopts a substantial evidence standard. If the court's decision rests solely on an interpretation of law, then we employ the de novo standard of review. (*Ibid*.)

Because the arbitrability of a portion of a PAGA claim presents a legal question that lies at the intersection of California labor and arbitration law, our review is de novo. (See *Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, review den. Jan. 20, 2020, D076569 (*Provost*) ["Here, we apply a de novo standard of review because the denial of arbitration of the

7

'individual' claim—whether Provost is an independent contractor or an 'aggrieved employee,' with standing under section 2699, subdivisions (a) and (c)—rests on a determination of the law"].)

### 3. **PAGA Claims**

#### a. *PAGA overview*

"In September 2003, the Legislature enacted the Labor Code Private Attorneys General Act of 2004 [citations]. The Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts. (Stats. 2003, ch. 906, § 1.)" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980-981 (*Arias*).) Under PAGA, an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees for Labor Code violations. (§ 2699, subd. (a).) An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c).)

Every PAGA claim is " 'a dispute between an employer and the *state*.' " (*Iskanian, supra*, 59 Cal.4th at p. 386.) "A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties. An employee suing under PAGA 'does so as the *proxy or agent of the state's labor law enforcement agencies*.' (*Arias*, *supra*, 46 Cal.4th at

8

p. 986, italics added)." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81.) "The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.' " (*Ibid.*)

Of the civil penalties recovered under a PAGA lawsuit, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees." (§ 2699, subd. (i).) The state's paramount interest means that relief under PAGA is designed foremost to benefit the general public, not individual parties bringing the action. (*Arias*, *supra*, 46 Cal.4th at p. 986.)

A PAGA claim does not need to satisfy requirements for class actions and "is binding not only on the named employee plaintiff, but also on government agencies and any aggrieved employee not a party to the proceeding." (*Arias*, *supra*, 46 Cal.4th at pp. 975, 985.)

b.    *PAGA claims are not subject to the FAA*

Zum argues in its response that "The Federal Arbitration Act Governs This Matter and Creates a Presumption in Favor of Arbitration." It points to part of the FAA that provides "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

Our Supreme Court has expressly rejected this argument. A "PAGA claim 'lies' completely 'outside the FAA's coverage

9

because it is not a dispute between an employer and an employee arising out of their contractual relationship.' [Citation.] It is . . . a dispute between an employer and the state, which alleges directly or through its agents—either the Labor and Workforce Development Agency or aggrieved employees—that the employer has violated the Labor Code." (*Iskanian*, *supra*, 59 Cal.4th at pp. 395-396.) "Representative actions under the PAGA, unlike class action suits for damages, do not displace the bilateral arbitration of private disputes between employers and employees over their respective rights and obligations toward each other. Instead, they directly enforce the state's interest in penalizing and deterring employers who violate California's labor laws." (*Id.* at p. 387.)

Undeterred, Zum tells us we should ignore our Supreme Court's decision in *Iskanian*: "The United States Supreme Court's recent arbitration jurisprudence confirms that the California Supreme Court's ruling in *Iskanian* cannot stand."

Zum misunderstands our authority. "On federal questions, intermediate appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently." (*Olson v. Lyft, Inc.* (2020) 56 Cal.App.5th 862, 870, original italics; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

"The United States Supreme Court's recent arbitration jurisprudence" to which Zum refers is found in *AT&T Mobility, LLC v. Concepcion* (2011) 563 U.S. 333 (*Concepcion*) and *Epic Sys. Corp. v. Lewis* (2018) __ U.S. __ [138 S.Ct. 1612] (*Epic Systems*). Both cases are cited repeatedly in Zum's return to the writ petition.

10

We are not persuaded that either opinion undermines *Iskanian*'s validity. The *Iskanian* opinion was filed some three years after *Concepcion*. Not only was our Supreme Court aware of *Concepcion*, it considered and relied on *Concepcion* for the first part of its holding. There, the court addressed the waivability of two different types of claims: (1) consumer class actions and (2) PAGA claims. As to the former, the court concluded that the FAA preempted the non-waivability of consumer class actions. The court concluded that "our holding to the contrary in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*) has been abrogated by recent United States Supreme Court precedent." (*Iskanian*, *supra*, 59 Cal.4th at pp. 359–360.) In the second part of its opinion, the court held that neither *Concepcion* nor the FAA applied to PAGA claims. Immediately after citing *Concepcion*'s general rule of FAA preemption, the court stated: "We conclude that the rule against PAGA waivers does not frustrate the FAA's objectives because, as explained below, the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state Agency." (*Iskanian,* at p. 384.) We are not at liberty to disregard a California Supreme Court opinion that expressly rejects the applicability of a United States Supreme Court opinion. (See *Olson v. Lyft, Inc.*, *supra*, 56 Cal.App.5th at p. 870.)

Zum asks us also to ignore *Iskanian* in favor of a second high court case, *Epic Systems*, *supra*, 138 S.Ct. 1612, a case decided after *Iskanian*. The United States Supreme Court addressed whether the FAA governed arbitration agreements between employers and employees when the employee brought claims under the Federal Labor Standards Act and a state class action. Relying significantly on *Concepcion*, the court held the

11

agreements to arbitrate the claims were enforceable. Neither *Concepcion* nor *Epic Systems* mentions PAGA or comparable laws in other states. Two of our sibling courts have already held that the issues decided in *Concepcion* and *Epic Systems* were not the "same" as those in *Iskanian.* (*Olson v. Lyft, Inc., supra,* 56 Cal.App.5th 862; *Correia, supra,* 32 Cal.App.5th 602 .) Both Courts of Appeal concluded that, even after *Epic Systems*, PAGA claims, which seek to vindicate state interests, not private party agreements, are not covered by the FAA. As Justice Haller wrote in *Correia, "Epic* did not address the specific issues before the *Iskanian* court involving a claim for civil penalties brought on behalf of the government and the enforceability of an agreement barring a PAGA representative action in any forum." (*Correia,* at p. 609; see also *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 673 ["We first reject Bloomingdale's suggestion that we depart from *Iskanian* either as wrongly decided or as superseded by intervening United States Supreme Court precedent"].)[5] We join those Courts of Appeal.

---

[5] We also observe that recently our Supreme Court cited *Iskanian* approvingly in an opinion that postdates *Epic Systems* by more than a year. (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175.) "In *Iskanian,* we declared unenforceable as a matter of state law an employee's predispute agreement waiving the right to bring these representative PAGA claims. Requiring employees to forgo PAGA claims in this way contravenes public policy by 'serv[ing] to disable,' through private agreement, one of the state's 'primary mechanisms' for enforcing the Labor Code. [Citation.] We then concluded the FAA did not preempt this rule or otherwise require enforcement of such a waiver in an arbitration agreement." (*Id.* at p. 185.)

> ### c. *PAGA claims cannot be arbitrated without state consent*

*Iskanian* held that the PAGA claim itself may not be waived by an employment agreement. It did not directly address whether an employer may contractually require a PAGA claim to be arbitrated. (*Iskanian, supra,* 59 Cal.4th at p. 384; see also *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 867.)

After *Iskanian*, several appellate courts have held that an individual PAGA plaintiff may not be required to arbitrate his or her PAGA claim. "[A]n employer cannot rely on an employee's predispute arbitration agreement to compel arbitration of a PAGA claim. [Citation.]" (*Collie v. The Icee Co.* (2020) 52 Cal.App.5th 477, 481, review den. Nov. 10, 2020, S264524; see also *Correia, supra,* 32 Cal.App.5th at pp. 621-622; *Provost., supra,* 55 Cal.App.5th at pp. 997-998; *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 447-448; *Julian v. Glenair, Inc., supra,* 17 Cal.App.5th at p. 872; *Tanguilig v. Bloomingdale's, Inc., supra,* 5 Cal.App.5th at p. 678.)

The rationale for this rule is stated plainly in *Correia:*

"*Without the state's consent*, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement. Under state and federal law, an arbitration agreement applies only to the parties who agreed to its terms and a party cannot be compelled to arbitrate a dispute that it has not elected to submit to arbitration." (*Correia, supra,* 32 Cal.App.5th at p. 622, italics added.)

13

Nothing in the record suggests that the state has consented to the arbitration of petitioners' PAGA claim.

### 4. The "Preliminary" Question of Whether Petitioners Are "Aggrieved Employees" Under PAGA May Not Be Decided in Private Party Arbitration

Zum argues that, even if PAGA claims are not subject to the FAA, even if *Iskanian* is still good law, and even if an employee by predispute agreement may not be forced to arbitrate a PAGA claim, the trial court's order was nevertheless correct.

Zum's position is that the order did not compel arbitration of a PAGA claim. What the trial court did was to carve out part of the PAGA claim – whether or not petitioners are really aggrieved employees – and then order that "antecedent" fact to be arbitrated. The argument continues, if petitioners are not employees but independent contractors, this is really not a PAGA claim at all, the law regarding PAGA claims does not apply, and the parties agreed to arbitrate.

Zum begins its legal discussion with the familiar rule that parties to an agreement can agree that the arbitrator may decide the question of arbitrability. (*Rent-A-Center, W., Inc. v. Jackson, supra*, 561 U.S. at pp. 68-69.) Zum asserts, "Here, the parties unmistakably agreed that only the arbitrator would decide gateway questions of arbitrability." The high court has cautioned that merely naming part of a dispute as a "gateway question" does not resolve necessarily "arbitrability." "Linguistically speaking, one might call any potentially dispositive gateway question a 'question of arbitrability,' for its answer will determine whether the underlying controversy will proceed to arbitration on the merits." (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83.)

14

With the high court's observation in mind, we turn to Zum's argument. That argument begins with what Zum characterizes as the Agreement's delegation clause. Although there is no provision in the Term of Service captioned "Delegation Clause," the trial court agreed with Zum that the Agreement delegated to the arbitrator the issue of whether petitioners were "aggrieved employees." The court relied on two provisions: "Here, [real party] asserts that the parties have 'clearly and unmistakably' agreed to delegate questions of arbitrability to an arbitrator because the dispute resolution provision provides that 'all disputes arising out of [or] relating to these Terms or our Service will be resolved through confidential binding arbitration.' Mtn., Garg Decl., Ex. B. Further, [Zum] asserts that the agreement expressly requires that arbitration be governed by the JAMS Streamlined Arbitration Rules and Procedures, which provide at Rule 8(b) that 'Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.' Mtn., Brick Decl., ¶¶ 3-4, Ex. D; Garg Decl., Ex. B."

Zum portrays the arbitrability question as "a private issue subject to a private agreement, not a public issue in which the State has an interest," as there will be no determinations on the merits of the claim. The state will not have an interest in the suit unless and until the arbitrator determines petitioners are employees and, if it does, the PAGA claim may be litigated in court. This is fallacious wordsmithing. If an arbitrator rules that petitioners are not "aggrieved employees," there will be no remaining PAGA claim anywhere. By virtue of an arbitration to

15

which it did not consent, the state will have lost one of its weapons in the enforcement of California's labor laws. This result would be at odds with the several appellate opinions we previously have cited, e.g., *Correia*: "Without the state's consent, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement." (*Correia*, *supra*, 32 Cal.App.5th at p. 622.)

Characterizing the process as resolving only an "arbitrability," "delegatable" or "gateway" issue, or the adjudication of an "antecedent" fact, does not extinguish the risk to the state that it is an arbitrator, not a court, who nullifies the state's PAGA claim.

This "splitting of the PAGA claim" argument is not new. Courts of Appeal have rejected Zum's position, although on a slightly different ground than lack of state consent. The most recent is *Provost*, *supra*, 55 Cal.App.5th 982. There, the Fourth District framed the issue as if it had the present case in mind: "YourMechanic sought to compel plaintiff Jonathan Provost to arbitrate whether he was an 'aggrieved employee' within the meaning of the Labor Code before he could proceed under the Labor Code Private Attorneys General Act of 2004 (PAGA) (§ 2698 et seq.) with his single-count representative action

16

alleging various Labor Code violations against the company."
(*Provost, supra,* 55 Cal.App.5th at p. 987, fn. omitted.)[6]

The court first reviewed the principles of waiver and
arbitrability of PAGA claims as set out in *Iskanian.* The *Provost*
court reminded that a PAGA claim is "a representative or *qui
tam*-type action and that the state is the real party in interest in
the suit." (*Provost, supra,* 55 Cal.App.5th at p. 987.)

The court held that the employer's motion to compel
arbitration of the "aggrieved employee" issue was an effort to
split a single representative PAGA action into (a) individual
arbitratable and (b) representative nonarbitrable components.
This, the Court of Appeal concluded, the employer cannot do.

Other Courts of Appeal before *Provost* have addressed
PAGA "splitting." The earliest of these is *Williams v. Superior
Court* (2015) 237 Cal.App.4th 642 (*Williams*). The trial court in
*Williams* was apparently presented with the converse of what we
have here. Zum seeks to arbitrate the "antecedent" fact of
whether petitioners are aggrieved employees. The defendant
employer in *Williams* sought to arbitrate the sequent fact of
whether there was a wage and hour violation. The *Williams*
defendant argued that plaintiff must first arbitrate his
"individual claim" because "he is required to prove the underlying
rest period violation in order to prevail, and the [arbitration
agreement] mandates that rest period claims be arbitrated."
(*Williams,* at p. 645.) The trial court denied defendant's motion

---

[6] The complaint in the present case is also a "single-count
representative action alleging various Labor Code violations."
(*Provost, supra,* 55 Cal.App.5th at p. 987.)

17

to enforce waiver of the plaintiff's PAGA claim, but ordered the "individual claim" to arbitration. (*Williams,* at p. 645.)

Division Four of this court issued a peremptory writ directing the trial court to deny the employer's motion in its entirety. The court pointed out there was no "individual claim" in petitioner's complaint. "The trial court cited no legal authority for its determination that a single representative action may be split in such a manner; [the employer] has identified no case so holding, and we have located none. Indeed, case law suggests that a single representative PAGA claim *cannot* be split into an arbitrable individual claim and a nonarbitrable representative claim." (*Williams, supra,* 237 Cal.App.4th at p. 649.)[7]

*Williams* was followed by *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408 (*Perez*). There, Division Seven of this court described the employer's motion to compel arbitration this way: "[Employer] contends, however, that plaintiffs may nonetheless be compelled to individually arbitrate the 'predicate issue of whether' they are 'aggrieved employee[s] within the

_____

[7] The defendant in *Williams* had argued in the trial court the arbitrator should decide the underlying Labor Code violation. The Court of Appeal described the actual ruling as Williams "must submit the 'underlying controversy' to arbitration for a determination whether he is an 'aggrieved employee' under the Labor Code with standing to bring a representative PAGA claim." (*Williams, supra,* 237 Cal.App.4th at p. 649.) Regardless of which part of the PAGA claim was to be arbitrated and which was to be adjudicated in court, *Williams*'s holding was clear: "[P]etitioner cannot be compelled to submit any portion of his representative PAGA claim to arbitration, including whether he was an 'aggrieved employee.'" (*Williams*, at p. 649.)

18

meaning of PAGA, and thus have standing to bring . . . representative claim[s].' According to [employer], if the arbitrator determines it did 'commit[ ] Labor Code violations against [plaintiffs]' (thereby establishing standing), plaintiffs may then pursue their 'representative PAGA claim [in court], e.g., . . . the number, scope and identities of other "aggrieved employees" that [plaintiffs] will represent, and the amount of representative penalties.' Stated more simply, [employer] argues that although 'neither [party] agreed to arbitrate representative issues, and neither may be compelled to participate in a representative arbitration,' plaintiffs may be compelled to individually arbitrate whether they have standing to bring such a representative claim." (*Id.* at p. 409.)

The *Perez* court rebuffed the argument. "We agree with *Williams*'s conclusion that California law prohibits the enforcement of an employment agreement provision that requires an employee to individually arbitrate whether he or she qualifies as an 'aggrieved employee' under the PAGA, and then (if successful) to litigate the remainder of the 'representative action in the superior court.' In *Iskanian*, the Supreme Court explained that 'every PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state.' (*Iskanian, supra,* 59 Cal.4th at p. 387.) The court also held that requiring an employee to bring a PAGA claim in his or her 'individual' capacity, rather than in a 'representative' capacity, would undermine the purposes of the statute. ([*Id.*] at pp. 383–384.) Given these conclusions, we do not believe an employer may force an employee to split a PAGA claim into 'individual' and

19

'representative' components, with each being litigated in a different forum." (*Perez*, *supra*, 3 Cal.App.5th at p. 421.)

Other courts have agreed with *Williams* and *Perez*. (See *Brooks v. AmeriHome Mortgage Co., LLC* (2020) 47 Cal.App.5th 624, 629 [because the plaintiff brought a PAGA representative claim, "he cannot be compelled to separately arbitrate whether he was an aggrieved employee"]; *Hernandez v. Ross Stores, Inc.* (2016) 7 Cal.App.5th 171, 178 ["determination of whether the party bringing the PAGA action is an aggrieved party . . . should not be decided separately by arbitration"]; see also *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 557 ["Because a PAGA claim is representative and does not belong to an employee individually, an employer should not be able [to] dictate how and where the representative action proceeds."].)

*Williams*, *Perez*, *Provost*, and the other cited cases all have reached the same conclusion. We agree with the chorus that in California, a PAGA plaintiff may not be compelled to arbitrate whether he or she is an aggrieved employee.[8]

---

[8] Zum argues that a "number of courts have examined whether a misclassification controversy must be resolved pursuant to the parties' arbitration agreement before the substantive portions of their claim could proceed. These courts have required the claimants first to arbitrate the misclassification gateway issue in accordance with the parties' contractual agreement." Zum cites a number of federal cases for this proposition. (See *Johnston v. Uber Technologies, Inc.* (N.D. Cal. 2019) 2019 WL 4417682, at *5; *Lamour v. Uber Technologies, Inc.* (S.D.Fla. 2017) 2017 WL 878712, at *12-13; *Ali v. Vehi-Ship, LLC* (N.D.Ill. 2017) 2017 WL 5890876, at *5; *Sakyi v. Estee Lauder Cos.* (D.D.C. 2018) 308 F.Supp.3d 366; *Olivares v. Uber Technologies, Inc.* (N.D.Ill. 2017) 2017 WL 3008278, at *3.)

20

### *DISPOSITION*

Let a peremptory writ of mandate issue directing the respondent court to vacate its July 22, 2020 order granting the motion to compel arbitration, and to issue a new order denying the motion.  Petitioners shall recover their costs in this proceeding.

RUBIN, P. J.

WE CONCUR:


BAKER, J.


MOOR, J.

---

None of these cases involve PAGA claims; of interest the arbitration provisions in two of the cases expressly excluded PAGA claims from arbitration.  (See *Johnston v. Uber Technologies, Inc., supra*, 2019 WL 4417682, at *5; *Olivares v. Uber Technologies, Inc., supra,* 2017 WL 3008278, at *3.)  We find these cases irrelevant to this appeal.