Filed 8/16/21  Pote v. Handy Technologies CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| PATRICK POTE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>HANDY TECHNOLOGIES, INC.,<br><br>        Defendant and Appellant. | B302770<br><br>(Los Angeles County<br>Super. Ct. No. BC723965) |

APPEAL from an order of the Superior Court of Los Angeles County, C. Edward Simpson, Judge.  Affirmed.

Manatt, Phelps & Phillips, Robert H. Platt, Andrew L. Satenberg and Benjamin G. Shatz for Defendant and Appellant.

Gibbs Law Group, Steven M. Tindall and Amanda M. Karl for Plaintiff and Respondent.

———————————————————

Handy Technologies, Inc. (Handy) appeals the denial of its motion to compel arbitration of Patrick Pote's claims brought under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).  Handy primarily contends its motion should have been granted and Pote ordered to arbitrate as an individual because *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), on which the superior court relied to deny Handy's motion, is irreconcilable with the subsequent United States Supreme Court decision in *Epic Systems Corp. v. Lewis* (2018) ___ U.S. ___ [138 S.Ct. 1612] (*Epic Systems*).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Pote's Complaint and First Amended Complaint*

On October 3, 2018 Pote filed a complaint and on November 19, 2018 the operative first amended complaint alleging causes of action against Handy under PAGA and for declaratory relief.  Pote alleged he had been employed as a house cleaner for Handy since April 2018; he and other service providers cleaned and repaired clients' houses for flat rates per job; and Handy's flat rate payment policy resulted in Pote and other providers not being paid for overtime, missed rest and meal breaks, expenses and travel time to and between jobs in violation of various Labor Code provisions.  He sought civil penalties under PAGA for those alleged Labor Code violations, which affected Pote and other California service providers.

Pote also alleged that, at the time he was hired and as a mandatory condition of his employment, Handy had required him to agree to a Service Professional Agreement containing provisions purporting to prohibit the pursuit of a representative

2

PAGA action for underpaid wages in any forum. Pote sought a declaration those provisions were void as against public policy.

2. *Handy's Motion To Compel Arbitration*

On March 26, 2019 Handy moved to compel arbitration and to stay litigation pursuant, in part, to Code of Civil Procedure section 1281.2 and the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.).

a. *The Carson declaration and Handy's Independent Contractor Acknowledgment*

In support of its motion Handy filed the declaration of Bailey Carson, a Handy senior vice-president. Carson averred Handy was a New York-based technology company offering an online platform allowing individuals seeking cleaning services to connect with professionals providing those services. Gaining access to Handy's platform required a cleaning professional to agree to Handy's Independent Contractor Acknowledgment (Acknowledgment) and the Service Professional Agreement. Carson's review of Handy's business records showed that on April 9, 2018 Pote logged into Handy's application for mobile devices that he had downloaded to his phone. By checking boxes and selecting "Confirm" or "Accept" buttons, Pote accepted the Acknowledgment, which was comprised of nine bullet points, and the Service Professional Agreement.

Carson's declaration included images of what he described as screenshots depicting how the Acknowledgment's nine bullet points appeared in Handy's mobile device application. One of the nine bullet points stated, "I understand that the Handy Service Professional Agreement contains a Mandatory and Exclusive

3

Arbitration provision which requires Handy and me to submit disputes to final and binding arbitration."

b. *The April 9, 2018 Service Professional Agreement*

Carson explained Pote could not have gained access to Handy's online platform without checking the box that states, "I agree to the Service Professional Agreement" or without selecting the "Accept" button in Handy's mobile device application. Carson stated Pote had accepted the Service Professional Agreement on April 9, 2018 (the April 9, 2018 agreement) and attached the April 9, 2018 agreement as an exhibit to his declaration.

Section 12.2 of the April 9, 2018 agreement, which was titled "Mutual Arbitration Provision," provided in part, in typeface containing all capital letters, "Handy and Service Professional mutually agree to waive their respective rights to the resolution of disputes in a court of law by a judge or jury and agree to resolve any dispute in arbitration . . . . [¶] . . . [¶] Except as expressly provided below, all disputes and/or claims between you and Handy shall be exclusively resolved in binding arbitration on an individual basis; class arbitrations and class actions are not permitted." Section 12.2 also provided, "This Mutual Arbitration Provision is governed by the Federal Arbitration Act (9 U.S.C. [§§] 1-16) and shall survive the termination of this Agreement."

Section 12.2(c), which was titled "Representative Action Waiver—Please Read" in typeface that was underlined and in bold and all capital letters, provided, "Handy and Service Professional mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard or arbitrated as a representative action, including but not limited to, a private attorney general action, and an

4

arbitrator shall not have any authority to arbitrate a representative action, including, but not limited to, a private attorney general action ('Representative Action Waiver'). Private attorney general representative actions brought on behalf of the state under the California Labor Code are not arbitrable, not within the scope of this Agreement and may be maintained in a court of law, but any claim brought by Service Professional for recovery of underpaid wages (as opposed to representative claims for civil penalties) under the California Labor Code shall be arbitrable, and must be brought, if at all, on an individual basis in arbitration as set forth in this Mutual Arbitration Provision."

Section 12.2(i), which was titled "Service Professional's Right to Opt Out of Arbitration," provided, "Arbitration is not a mandatory condition of Service Professional's contractual relationship with Handy . . . . In order to opt out, Service Professional must notify Handy of Service Professional's intention to opt out by submitting to Handy . . . a signed and dated written notice stating that Service Professional is opting out of this Mutual Arbitration Provision. Service Professional also may opt out by sending an email . . . . In order to be effective, Service Professional's opt out notice must be provided within 30 days of the date this Agreement is electronically signed by Service Professional ('Effective Date')." The April 9, 2018 agreement provided the mailing and email addresses for any opt-out notice to be sent. In his declaration Carson explained Pote did not exercise his right to opt out of the April 9, 2018 agreement or any subsequent agreements.

c. *The October 26, 2018 Service Professional Agreement*

Carson averred that, any time Handy makes changes to the Acknowledgement or Service Professional Agreement, the service

5

professional must confirm and accept the new terms in Handy's mobile application. According to Carson, on October 26, 2018 Pote confirmed and accepted an updated version of the Acknowledgment, as well as of the Service Professional Agreement (October 26, 2018 agreement), both of which Carson attached to his declaration.

Carson stated the October 26, 2018 agreement was "substantially similar" to the April 9, 2018 agreement but with "minor changes" to the arbitration provision. Specifically, section 12.2(c) of the October 26, 2018 agreement, which again was titled "Representative Action Waiver—Please Read" in typeface that was underlined and in bold and all capital letters, was modified from the April 9, 2018 version and provided, "Handy and Service Professional mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard or arbitrated as a representative action, and an arbitrator shall not have any authority to arbitrate a representative action ('Representative Action Waiver'). Notwithstanding the foregoing, private attorney general representative actions brought prior to the effective date of this Agreement on behalf of the state under the California Labor Code are not arbitrable, not within the scope of this Agreement and may be maintained in a court of law, but any claim brought by Service Professional for recovery of underpaid wages (as opposed to representative claims for civil penalties) under the California Labor Code shall be arbitrable, and must be

6

brought, if at all, on an individual basis in arbitration as set forth in this Mutual Arbitration Provision."[1]

### d. *Handy's arguments in support of its motion*

In support of its motion to compel arbitration Handy argued the parties' mutual agreement to arbitrate was valid and enforceable and required Pote's claims for unpaid wages under PAGA and for PAGA civil penalties to be arbitrated on an individual (non-representative) basis. Specifically, relying on *Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, which, as Handy explained, ruled that an employee's PAGA claims seeking victim-specific unpaid wages, as opposed to civil penalties, were not exempt from arbitration under *Iskanian*, *supra*, 59 Cal.4th 348, Handy contended the Representative Action Waiver (in both the April 9, 2018 agreement and the October 26, 2018 agreement) was enforceable as to, and required individual arbitration of, Pote's PAGA claims seeking victim-specific unpaid wages. As for Pote's PAGA claims for civil penalties, Handy asserted the Representative Action Waiver was also enforceable as to, and required individual arbitration of, those claims because "*Iskanian*'s prohibition of individual arbitration of PAGA civil-penalty claims is irreconcilable with *Epic Systems*[, *supra*, 138 S.Ct. 1612]." In the alternative Handy argued, if the superior court were to decline to enforce the Representative Action Waiver in its entirety, the court should sever and stay Pote's PAGA claims for civil penalties pending

---

[1]     The quoted provisions of section 12.2 in the April 9, 2018 agreement (including section 12.2(i)) were otherwise nearly identical to the corresponding provisions in the October 26, 2018 agreement.

completion of individual arbitration of his claims for victim-specific relief.

### 4. *Pote's Opposition and Handy's Reply*

On April 8, 2019 Pote filed an opposition to Handy's motion to compel arbitration and to stay litigation. As procedural background Pote in his opposition explained that on September 14, 2018, pursuant to Labor Code section 2699.3, he (through his attorney) submitted notice to the California Labor and Workforce Development Agency (LWDA) and to Handy of Handy's alleged violations of specific provisions of the Labor Code. The notice also informed the LWDA and Handy of Pote's intent to file an action under PAGA against Handy. Pote's opposition stated the LWDA, pursuant to Labor Code section 2699.3, had 65 days to respond to his PAGA notice and when the 65-day period expired without any action by the LWDA, Pote amended his complaint to add a cause of action under PAGA for those alleged Labor Code violations. In support of his opposition Pote filed his attorney's declaration attaching a copy of the September 14, 2018 PAGA notice. Pote's opposition also stated he filed his action on October 3, 2018 against Handy, initially seeking declaratory relief regarding enforceability of provisions of Handy's Service Professional Agreement, and later amended his complaint to add a single cause of action under PAGA.[2]

As for Pote's arguments, he contended the Representative Action Waiver was unenforceable under *Iskanian, supra,*

---

[2] In its motion to compel arbitration Handy similarly explained Pote "for the first time" brought a PAGA representative action in his first amended complaint filed on November 19, 2018.

8

59 Cal.4th 348.  He presented various arguments why *Epic Systems*, *supra*, 138 S.Ct. 1612 did not overrule *Iskanian*.

Pote also argued Handy's contention the Representative Action Waiver should be enforced as to Pote's victim-specific claims failed, among other reasons, because he made no victim-specific claims and only sought penalties under PAGA.  In his supporting declaration Pote's attorney averred Pote was limiting his claims to PAGA representative claims seeking civil penalties, including unpaid wages, on behalf of the State of California.  Subsequently, on October 10, 2019, Pote filed a notice of new authority stating that, on September 12, 2019, the California Supreme Court decided *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, in which the Court held representative plaintiffs could not recover unpaid wages under PAGA.  Pote's notice of new authority explained Pote thus no longer sought to recover unpaid wages as part of his representative PAGA action and agreed to dismiss that portion of his complaint.

On October 10, 2019 Handy filed its reply in support of its motion to compel arbitration.  Handy argued, even assuming *Iskanian*, *supra*, 59 Cal.4th 348 remained good law, the case only held a predispute waiver of the right to assert a PAGA claim on a representative basis was unenforceable but the Representative Action Waiver was a postdispute waiver:  Pote, while represented by counsel, agreed to the Representative Action Waiver on October 26, 2018 after Pote initiated the dispute and reaffirmed his assent to that waiver on November 25, 2018, the expiration date of the 30-day window to opt out.

5.  *The Superior Court's Order*

The superior court issued a tentative ruling denying Handy's motion.  The court rejected Handy's argument that

Pote's claims for civil penalties under PAGA should be compelled to individual arbitration based on the Representative Action Waiver. Among other matters the court cited authority for the proposition a single representative PAGA claim could not be split into an arbitrable individual claim and a nonarbitrable representative claim; determined *Epic Systems*, *supra*, 138 S.Ct. 1612 did not invalidate the California Supreme Court's holding in *Iskanian*, *supra*, 59 Cal.4th 348 that an employee's right to bring a representative PAGA action is unwaivable; and, because it was still bound by *Iskanian*, concluded the Representative Action Waiver was unenforceable. The court declined to consider Handy's contention the Representative Action Waiver was a postdispute waiver and thus enforceable, on the ground Handy raised that argument for the first time in its reply brief and thus to consider it would deprive Pote of the opportunity to respond.

The court also rejected Handy's argument that Pote's PAGA claims seeking damages on behalf of affected workers, such as victim-specific unpaid wages, should be compelled to individual arbitration, finding Pote had not brought any victim-specific claims. Finally, it denied Handy's request for a stay of the litigation pending arbitration of victim-specific or any other claims because it ordered no part of the action to arbitration.

At the hearing on its motion Handy's attorney asked the court to allow Pote to provide supplemental briefing on the postdispute waiver argument so that the court could entertain the issue. Pote's counsel told the court it was inappropriate for Handy to raise a completely new issue on reply. The superior court agreed with Pote's attorney and adopted as its order the tentative ruling denying Handy's motion to compel arbitration and to stay litigation.

**DISCUSSION**

1. *Standard of Review*

Code of Civil Procedure section 1281.2 requires the trial court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy . . . if it determines that an agreement to arbitrate the controversy exists."[3] The party seeking to compel arbitration bears the burden of proving an agreement to arbitrate exists. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*). If an agreement to arbitrate exists, the burden shifts to the party refusing arbitration to demonstrate the agreement is unenforceable. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; see *AT&T Mobility LLC v. Concepcion* (2011)

---

[3] Even where the FAA applies, the question whether an agreement to arbitrate a particular controversy exists is governed by state law. (See *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 ["[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary . . . principles that govern the formation of contracts"]; *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 961-962 [rejecting argument that FAA preempts state contract principles; the question whether an agreement has been formed to arbitrate a particular dispute is one of contract interpretation under state law]; see generally *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 289 [FAA simply reverses judicial hostility to arbitration agreements by placing them on same footing as any other contract].)

563 U.S. 333, 339 [section 2 of the FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract'"].)

Absent conflicting extrinsic evidence, the validity of an arbitration clause is a question of law subject to de novo review. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1468; *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277.)  We also review de novo the interpretation of an arbitration agreement, including the scope of the agreement, when that interpretation does not depend on the resolution of conflicting extrinsic evidence.  (*Pinnacle, supra,* 55 Cal.4th at p. 236; see *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 619, fn. 11 [absent conflicting extrinsic evidence, the "determination whether FINRA's arbitration rules cover a particular dispute" is a question of law subject to de novo review]; *Valentine Capital Asset Management, Inc. v. Agahi* (2009) 174 Cal.App.4th 606, 613 [same].)

2.  *This Court Remains Bound by* Iskanian

As the trial court accurately stated, the California Supreme Court in *Iskanian*, *supra*, 59 Cal.4th 348, held representative PAGA action waivers are unenforceable.  The United States Supreme Court's decision in *Epic Systems*, *supra*, 138 S.Ct. 1612 did not address that question and did not overrule or disapprove *Iskanian*.  Handy's argument the analysis underlying *Iskanian* is incompatible with that in *Epic Systems* is properly addressed to the California Supreme Court or the United States Supreme Court,[4] not to this court:  "On federal questions, intermediate

_____

[4]    A petition for writ of certiorari, currently pending in the United States Supreme Court in *Viking River Cruises, Inc. v.*

12

appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently." (*Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 619; accord, *Contreras v. Superior Court* (2021) 61 Cal.App.5th 461, 470; *Olson v. Lyft, Inc.* (2020) 56 Cal.App.5th 862, 870; see generally *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) *Iskanian* remains controlling authority.

### a. Iskanian

*Iskanian* concerned an employee who sought to bring a class action on behalf of himself and similarly situated employees for the employer's alleged failure to compensate its employees for overtime and meal and rest breaks. The employee had entered into an arbitration agreement waiving the right to class actions. The *Iskanian* Court held state law precluding enforcement of such class action waivers on the grounds of unconscionability or public policy was preempted by the FAA. (*Iskanian, supra,* 59 Cal.4th at pp. 359-360.) The Court also rejected the argument the National Labor Relations Act (NLRA)—which at section 7 provides employees have the right to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection and at section 8(a) states it is an unfair labor practice for an employer to interfere with, coerce or restrain employees in the exercise of rights under section 7 (*Iskanian,* at

---

*Moriana* (No. 20-1573), seeks review of an unpublished decision from Division Three of this court and asks the Supreme Court to decide "[w]hether the [FAA] requires enforcement of a bilateral arbitration agreement providing that an employee cannot raise representative claims, including under PAGA."

pp. 360, 367-368)—rendered the class action waiver unlawful: "We . . . conclude, in light of the FAA's "'liberal federal policy favoring arbitration'" [citation], that sections 7 and 8 [of] the NLRA do not represent "'a contrary congressional command'" overriding the FAA's mandate." (*Id*. at p. 373.)

The arbitration agreement, however, required the waiver of not only class actions but also "representative actions"; and the employee also sought to bring a representative action under PAGA, which "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." (*Iskanian*, *supra*, 59 Cal.4th at pp. 378, 360.) An employment agreement compelling the waiver of representative claims under PAGA, the Supreme Court held, "is contrary to public policy and unenforceable as a matter of state law," and the FAA does not preempt such law. (*Id*. at pp. 360, 384.)

The Court explained a PAGA representative action is "a type of qui tam action. . . . The government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit." (*Iskanian*, *supra*, 59 Cal.4th at p. 382.) Because "the Legislature's purpose in enacting the PAGA was to augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the [LWDA]," "an agreement by employees to waive their right to bring a PAGA action serves to disable one of the primary mechanisms for enforcing the Labor Code"; "has as its 'object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law'"; and thus is "against public policy and may not be enforced." (*Id*. at p. 383.)

The Court rejected the argument the FAA preempts the state law rule against PAGA waivers because "the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state [LWDA]." (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) Relying on the statutory text and the legislative history of the FAA, the Court stated, "There is no indication that the FAA was intended to govern disputes between the government in its law enforcement capacity and private individuals." (*Id.* at p. 385.) "Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [LWDA] or aggrieved employees—that the employer has violated the Labor Code. . . . '[E]*very* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state.' [Citation.] [¶] . . . Representative actions under the PAGA, unlike class action suits for damages, do not displace the bilateral arbitration of private disputes between employers and employees over their respective rights and obligations toward each other. Instead, they directly enforce *the state's* interest in penalizing and deterring employers who violate California's labor laws." (*Id.* at pp. 386-387.) The Court concluded, "California's public policy prohibiting waiver of PAGA claims, whose sole purpose is to vindicate the [LWDA's] interest in enforcing the Labor Code, does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution." (*Id.* at pp. 388-389.)

b.  Epic Systems

*Epic Systems*, *supra*, 138 S.Ct. 1612 did not involve waiver of a right to bring a representative action like a PAGA claim.  An accounting firm and one of its accountants had agreed to arbitrate any disputes that might arise between them, with arbitration to be individualized so that claims concerning different employees would be heard in separate proceedings.  After his employment ended, the accountant sued the firm in federal court, alleging violations of the federal Fair Labor Standards Act (FLSA) and California law, and sought to pursue his federal claim on behalf of a nationwide class under the FLSA's collective action provision and his state claim as a class action.  The firm brought a motion to compel arbitration, which the district court granted.  The Ninth Circuit reversed:  The FAA's saving clause (9 U.S.C. § 2), the Ninth Circuit determined, removed the general obligation to enforce arbitration agreements as written if the agreement violates some other federal law; and an agreement requiring individualized arbitration proceedings violated the NLRA by precluding employees from engaging in the concerted activity of pursuing claims as a class or collective action.  (*Epic Systems*, at pp. 1619-1620.)  The United States Supreme Court disagreed, concluding the FAA and the NLRA, "[f]ar from conflicting," "have long enjoyed separate spheres of influence and neither permits this Court to declare the parties' agreements unlawful."  (*Id*. at p. 1619.)

The decision in *Epic Systems*, which parallels the class action portion of *Iskanian*, did not address whether an employee may waive a right to bring a representative action on behalf of a state government or even consider the underlying premise of *Iskanian* that a PAGA action is not an individual dispute

between private parties but an action brought on behalf of the state by an aggrieved worker designated by statute to be a representative of the state. Accordingly, Handy's contention *Iskanian* cannot be reconciled with *Epic Systems* is simply incorrect.[5] As observed by Division One of the Fourth District in *Correia v. NB Baker Electric, Inc.*, *supra*, 32 Cal.App.5th at page 620, "*Epic* did not reach the issue regarding whether a governmental claim of this nature is governed by the FAA, or consider the implications of a complete ban on a state law enforcement action. Because *Epic* did not overrule *Iskanian*'s holding, we remain bound by the California Supreme Court's decision."

---

[5] The same or substantially similar arguments urging courts of appeal to decline to apply *Iskanian*'s anti-PAGA waiver rule have been uniformly rejected. (See, e.g., *Winns v. Postmates Inc.* (2021) 66 Cal.App.5th 803; *Rosales v. Uber Technologies, Inc.* (2021) 63 Cal.App.5th 937, 943-945; *Contreras v. Superior of Los Angeles County*, *supra*, 61 Cal.App.5th at pp. 471-472; *Olson v. Lyft, Inc.*, *supra*, 56 Cal.App.5th at pp. 867-868, 872; *Correia v. NB Baker Electric, Inc.*, *supra*, 32 Cal.App.5th at pp. 619-620; see also *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 86-87 [stating a PAGA claim "is different from a class action" and relying on *Iskanian* for the proposition "[t]here is no individual component to a PAGA action"]; *ZB, N.A. v. Superior Court*, *supra*, 8 Cal.5th at pp. 197-198 ["*Iskanian* established an important principle: employers cannot compel employees to waive their right to enforce the state's interests when the PAGA has empowered employees to do so"; "[a]n employee's predispute agreement to individually arbitrate her claims is unenforceable where it blocks an employee's PAGA claim from proceeding"].)

17

### 3. *Handy's Remaining Arguments Do Not Compel a Different Result*

Handy, relying on an unpublished 2009 federal district court decision, asserts the state's ownership of PAGA claims is a "legal fiction." Handy's cryptic argument does not change the fact "the state is the real party in interest." (*Iskanian*, *supra*, 59 Cal.4th at p. 387; see *id.* at p. 388 ["importantly, a PAGA litigant's status as 'the proxy or agent' of the state [citation] is not merely semantic; it reflects a PAGA litigant's substantive role in enforcing our labor laws on behalf of state law enforcement agencies"]; see also *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 86 ["a PAGA claim is an enforcement action between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government"; "civil penalties recovered on the state's behalf are intended to 'remediate present violations and deter future ones,' *not* to redress employees' injuries"].)

Advancing a different argument, but again citing federal decisions, including *Valdez v. Terminix International Co. Limited Partnership* (9th Cir. 2017) 681 Fed. Appx. 592, Handy contends individual employees can pursue PAGA claims in arbitration because they are acting with the state's consent, as evidenced by the state's decision not to pursue the PAGA claim itself.[6] In

---

[6] The party seeking enforcement of an arbitration contract has the burden of establishing the authority of a person who purportedly signed the agreement as an agent on behalf of a nonsignatory party. (See, e.g., *Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 506 ["burden of proving ostensible agency is upon the party asserting that relationship"]; *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301-302 [skilled nursing facility failed to produce required evidence that children of deceased mother had authority to enter into an arbitration

*Valdez*, the Ninth Circuit concluded, "[A]n individual employee, acting as an agent for the government, can agree to pursue a PAGA claim in arbitration. *Iskanian* does not require that a PAGA claim be pursued in the judicial forum; it holds only that a complete waiver of the right to bring a PAGA claim is invalid." (*Id*. at p. 594.) Setting aside whether we agree with those federal decisions, Handy ignores that in the case at bar the Representative Action Waivers in both agreements purported to waive the "right to have any dispute or claim brought, heard or arbitrated as a representative action" and thus to effect a complete waiver of the right to bring PAGA claims, which can only be brought as a representative action (e.g., *Kim v. Reins International California, Inc.*, *supra*, 9 Cal.5th at pp. 86-87); they are thus unenforceable under *Iskanian*.[7]

agreement on her behalf]; *Oswald Machine & Equipment, Inc. v. Yip* (1992) 10 Cal.App.4th 1238, 1247 ["[u]nless the evidence is undisputed, the scope of an agency relationship is a question of fact, and the burden of proof rests on the party asserting the relationship"].)

[7] In *Valdez v. Terminix International Co. Limited Partnership*, *supra*, 681 Fed. Appx. at page 594, the Ninth Circuit also stated, "The parties mutually agreed 'to arbitrate covered Disputes.' That clause of the parties' agreement applies even after the representative action waiver is severed." If Handy is relying on *Valdez* to argue the superior court erred by not severing the unenforceable provisions of the October 26, 2018 agreement purporting to waive the right to bring a representative action in any forum (that is, the "right to have any dispute or claim brought, heard or arbitrated as a representative action") and ordering the PAGA claims to arbitration, Handy ignores that the agreement separately provides "an arbitrator shall not have any authority to arbitrate a representative action," that Pote only

Insisting the trial court erred in ruling the argument had been forfeited, Handy contends *Iskanian* does not control, in any event, because its holding was limited to predispute waivers, while Pote's waiver is contained in an agreement signed after he was aware of the claimed Labor Code violations. (*Iskanian*, *supra*, 59 Cal.4th at p. 383 ["Of course, employees are free to choose whether or not to bring PAGA actions when they are aware of Labor Code violations. [Citation.] But it is contrary to public policy for an employment agreement to eliminate this choice altogether by requiring employees to waive the right to bring a PAGA action before any dispute arises"].)

Handy contends Pote's dispute with Handy arose no later than September 14, 2018, when Pote's attorney served Pote's PAGA notice alleging Handy's Labor Code violations on Handy and the state (LWDA). Yet Pote agreed on October 26, 2018 to waive representative actions and failed to exercise his right to opt out by November 25, 2018. Emphasizing the late November date, Handy argues Pote's PAGA waiver was postdispute and thus enforceable because it occurred after Pote's dispute with Handy arose; after Pote was represented by counsel; after Pote filed his original complaint on October 3, 2018; after the LWDA failed to respond within 65 days of the September 14, 2018 PAGA notice; and after Pote filed his operative amended complaint alleging a PAGA claim on November 3, 2018. Handy asserts, during the postdispute phase in which the state has declined to prosecute an employee's PAGA claim (that is, after November 18, 2018), the employee has already been "deputized" to act on the state's behalf

_____

brought PAGA claims, and that PAGA claims can only be brought as a representative action.

and has freedom to control how to pursue the PAGA claim, including whether to agree to individualized arbitration of the claim.

As explained by Division Four of this court in *Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 866 (*Julian*), "Labor Code section 2699.3, subdivision (a), sets forth the procedures with which an aggrieved employee must comply in order to commence a PAGA action." "[A]n arbitration agreement executed before an employee meets the statutory requirements for commencing a PAGA action does not encompass that action. Prior to satisfying those requirements, an employee enters into the agreement as an individual, rather than as an agent or representative of the state. As an individual, the employee is not authorized to assert a PAGA claim; the state—through LWDA—retains control of the right underlying any PAGA claim by the employee. Thus, such a predispute agreement does not subject the PAGA claim to arbitration." (*Id.* at p. 872; see also *id.* at p. 870 ["Only after employees have satisfied the statutory requirements for commencing a PAGA action are they in a position 'to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights.' [Citation.] Prior to that point, the employees either have submitted no allegations of Labor Code violations to LWDA, or have done so, but await LWDA's determination regarding the extent to which LWDA itself will resolve the allegations"].)

Whatever the merits of Handy's arguments the superior court erred in finding forfeiture and the *Iskanian* holding is limited to predispute waivers, Pote entered into a predispute, not postdispute, waiver. As our colleagues in *Julian*, *supra*, 17 Cal.App.5th at page 870 explained, "[T]he

21

predispute/postdispute boundary is crossed when the pertinent employee is authorized to commence a PAGA action as an agent of the state." Pote provided his PAGA notice to both Handy and the LWDA on September 14, 2018. Pursuant to Labor Code section 2699.3, subdivision (a), Pote lacked statutory authorization to commence his PAGA action until 65 days after that date—that is, November 18, 2018. He agreed to the waiver of representative actions on October 26, 2018[8]—prior to both the November 18, 2018 date on which the 65-day waiting period to commence his PAGA action expired and the November 19, 2018 date on which he filed his first amended complaint alleging a cause of action under the PAGA.

Handy's contention we should consider the waiver date to be November 25, 2018, the last day on which he could opt out of the Mutual Arbitration Provision in the October 26, 2018 agreement, rather than October 26, 2018 itself, lacks merit. It is the October 26, 2018 agreement that contains the waiver, and it

_____

[8] The unambiguous language of the April 9, 2018 agreement shows Pote did not agree to arbitrate or waive his PAGA claim under that agreement. (See Civ. Code, §§ 1638 ["language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"]; 1639 ["[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"].) As discussed, Section 12.2(c) of the April 9, 2018 agreement provided, "Private attorney general representative actions brought on behalf of the state under the California Labor Code are not arbitrable, not within the scope of this Agreement and may be maintained in a court of law." In its reply brief in this court Handy refers to the Representative Action Waiver of the October 26, 2018 agreement as the "operative version."

22

is that agreement Handy sought to enforce with its motion to compel arbitration. When Pote confirmed and accepted the October 26, 2018 agreement he was not yet authorized to commence his PAGA action as an agent of the state; he agreed in his individual capacity only. His corresponding right to opt out of the arbitration agreement was similarly an individual one. Pote's decision not to exercise that individual right does not effect a waiver of a claim belonging to the state. (Cf. *Correia v. NB Baker Electric, Inc.*, *supra*, 32 Cal.App.5th at pp. 622-623 ["a person who signs an agreement in a particular capacity is not necessarily bound when acting in a different capacity"]; *Julian*, *supra*, 17 Cal.App.5th at pp. 871-872 ["[o]rdinarily, when a person who may act in two legal capacities executes an arbitration agreement in one of those capacities, the agreement does not encompass claims the person is entitled to assert in the other capacity"].) The provisions of the October 26, 2018 agreement, including any opt-out right, do not compel waiver of the PAGA claim.

Finally, Handy contends *Iskanian* is inapposite because, given section 12.2(i)'s opt-out provision, Pote was not compelled as a condition of his employment to accept Handy's arbitration provision. (See *Iskanian, supra*, 59 Cal.4th at p. 360 ["we conclude that an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy"]; see *id.* at p. 384 ["[w]e conclude that where, as here, an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law"].) Regardless of the merit of Handy's contention, if any, Handy fails to establish the

superior court committed reversible error: Handy argued in the superior court, and asserts on appeal, Pote's PAGA claims must be arbitrated on an individualized, nonrepresentative basis, but, as discussed, "[t]here is no individual component to a PAGA action." (*Kim v. Reins International California, Inc.*, *supra*, 9 Cal.5th at pp. 86-87.)

## DISPOSITION

The order denying Handy's motion to compel arbitration is affirmed. Pote is to recover his costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.